[No. C048289. Third Dist. June 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GAGIK KARAPETYAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IV.

## COUNSEL

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Jibson and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—On September 2, 2003, at approximately 11:00 p.m., Sacramento Police Officer Barry Lee responded to a reported stabbing. Upon arrival, he found the victim Andrey Tsurkanu already dead, with six men surrounding the body. Several days later, defendant Gagik Karapetyan walked into a sheriff's department substation and confessed to killing Andrey. He was tried and convicted of second degree murder.

Defendant appeals contending the trial court erred: (1) when it instructed the jury that an aider and abettor to assault could be liable for murder if death was a natural and probable consequence of the assault, (2) when it admitted evidence of a prior incident, (3) when it admitted defendant's statement that

he used a knife, and (4) by not instructing the jury on imperfect defense of others. We affirm.

## FACTS AND PROCEDURE

On September 2, 2003, Andrey Tsurkanu and his cousin Sergey Melnichuk went to Pavel Tveretinov's auto auction to pick up a friend who worked there.[1] The friend was not there when they arrived, so Andrey and Sergey waited. Defendant, his son-in-law Ararat Manakyan, and Isaak Ambaryan were barbequing in the area. Sergey peeked into defendant's motor home, which was near the barbeque, and defendant became upset, telling him not to look in. Isaak told Sergey to tell Andrey, "[W]ho does he think he is to let you look inside." Sergey did as instructed, and Andrey confronted Isaak about the statement. They argued and, shortly thereafter, defendant joined in. Pavel told everyone if they wanted to fight they would have to leave the auction.

Andrey and his friends left and went to a lot near the auto auction. Andrey called Kolya Bagdasaryan, a friend of his, so that he could witness the ensuing confrontation between Andrey and defendant. Kolya arrived, and about five minutes later, Isaak, Ararat, defendant, and defendant's two sons, arrived in three different cars.[2] Ararat greeted Kolya. About the same time, Isaak ordered defendant's sons to hit Andrey and a fight ensued.

Defendant, his sons, and Isaak chased Andrey, who ran after he saw that none of his friends were going to help him. Andrey was not armed. Defendant and his son Yegi were carrying sharp metallic items. Defendant, both his sons, and Isaak all struck Andrey. Ararat testified that he remembered making statements to the police that defendant told him he stabbed Andrey, that Ararat had seen defendant hitting Andrey with the metallic object, and that defendant had both a gun and a knife. He also remembered telling police that defendant had done something really bad, was the only one to chase Andrey across the street, and told everyone to leave after Andrey fell. Andrey died on the scene from a fatal stab wound to the chest. He also had a possibly fatal wound to his back, as well as some more superficial stab wounds and other smaller puncture wounds caused by a screwdriver.

About a week after the stabbing, defendant approached a public counter of a Sacramento County Sheriff's Department substation, placed his driver's license on the counter, and told the security officers he killed Andrey.

---

[1] To minimize confusion, the people who played a lesser role will not be named.

[2] At the time of trial, the whereabouts of defendant's sons, Yegi and Daniel, was unknown.

Followup questions from a security officer revealed that defendant used a knife.

Defendant testified he is a "peaceful person." He stated he had a hernia when he turned himself in at the sheriff's substation. The hernia kept him from being able to run more than a few steps. Defendant took Andrey to defendant's mother's house for dinner on more than one occasion and considered him a friend. The day of the incident, he warned Andrey and Sergey not to go into the motor home because he had meat marinating inside and was afraid that they would spill it.

Defendant further testified that Pavel convinced him to go to the lot where Andrey was by telling him he would be safe and informing him that defendant's sons were already there. Defendant stayed in the car because he was afraid they would attack him. He got out after the fight began and tried to separate Andrey and his son but fell to the ground. Defendant denied chasing Andrey, stabbing him, or hitting him with a gun. He stated he got up and returned to the barbeque at the auction.

Defendant went to the river, where he stayed for five or six days, looking for his sons. He learned his sons were fugitives from the community. In an attempt to protect them, he went to the sheriff's department substation and turned himself in for the murder. Because of language difficulties he felt that he could not explain the whole situation. Defendant maintained he did not kill Andrey.

The jury convicted defendant of second degree murder, but found the firearm enhancement to be false.[3] The trial court sentenced him to state prison for 15 years to life.

## DISCUSSION

### I

### *Instruction on Aider and Abettor Liability*

Defendant contends the trial court erred when it instructed the jury that an aider and abettor to assault could be liable for murder if death was a natural

---

[3] This was the second jury trial in this case. The first trial ended in a mistrial because of a hung jury.

and probable consequence of the assault. While the jury instructions included several theories of liability, defendant presumes, because of a question asked by the jury during deliberations, that the jury probably found him guilty based upon this theory. Whether or not this is true, the argument fails.

## A. Sufficiency of the Evidence

■ The natural and probable consequence theory of liability requires a finding by the jury that death was reasonably foreseeable under the circumstances. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531 [26 Cal.Rptr.2d 323].) Defendant contends the instruction was given in error because there was insufficient evidence that death was a reasonably foreseeable result of the assault. We conclude there was sufficient evidence that death was reasonably foreseeable and, therefore, reject this assertion.

On the issue of foreseeability, the "question is not whether the aider and abettor *actually* foresaw the . . . crime, but whether, judged objectively, it was *reasonably* foreseeable." (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1133 [77 Cal.Rptr.2d 428, 959 P.2d 735], original italics.) Assuming the jury believed that defendant aided and abetted his sons in assaulting Andrey, the jury also could have believed it was reasonably foreseeable that death was a natural and probable consequence of that assault.

The evidence showed a group of men challenging a single unarmed victim with an assortment of weapons available for their use. Furthermore, the assailant stabbed Andrey with a knife, a deadly weapon. The assailant did not stab Andrey in an insignificant area of his body; instead, the assailant stabbed Andrey in his heart. Defendant denies that this attack on Andrey was a fight to the death. This, however, was an argument for the jury. The jury could infer from the circumstances of the fight that Andrey's death was a foreseeable consequence of the assault.

## B. *Ireland* Rule

Defendant contends that the finding of murder based on aiding and abetting an assault is really just felony murder, which is barred by *People v. Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580] (*Ireland*). Defendant's argument fails, as these facts do not trigger application of the *Ireland* rule.

■ In *Ireland, supra,* 70 Cal.2d 522, the court held that felony-murder instructions were improper when they were based upon a felony that was an integral part of the homicide. To allow otherwise "would effectively preclude

the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides." (*Id.* at p. 539.) Because a homicide generally results from the commission of an assault, every felonious assault ending in death would be elevated to murder, relieving the burden of the prosecutor to prove malice in most cases. (*People v. Hansen* (1994) 9 Cal.4th 300, 311–312 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) This would frustrate the Legislature's intent to punish certain felonious assaults resulting in death more harshly than other assaults that happened to result in death but were committed without malice aforethought. (*Ibid.*)

The facts of this case do not implicate the merger doctrine discussed in *Ireland.* As the Attorney General points out, defendant's argument would be viable if the law stated that anyone who aided and abetted an assault that ended in death would be guilty of murder, whether or not the death was a natural and probable consequence of the assault. That would be a merged felony murder based on assault and would be prohibited by *Ireland.* (*Ireland, supra,* 70 Cal.2d at p. 539.) However, the natural and probable consequences doctrine operates independently of the second degree felony-murder rule. (*People v. Culuko* (2000) 78 Cal.App.4th 307, 322 [92 Cal.Rptr.2d 789].) The natural and probable consequences doctrine does not merge all assaults into the felony-murder rule. Rather, it is a theory of liability for murder that applies when the assault has the foreseeable result of death. For aider and abettor liability, it is the intention to further the acts of another that creates criminal liability and not the felony-murder rule. (*People v. Brigham* (1989) 216 Cal.App.3d 1039, 1052–1054 [265 Cal.Rptr. 486].)

■ "An aider and abettor's derivative liability for a principal's criminal act has two distinct prongs: First, the aider and abettor is liable for the particular crime that to his knowledge his confederates are contemplating. Second, the aider and abettor is also liable for the natural and probable consequences of any criminal act he knowingly and intentionally aids and abets . . . . [¶] . . . The law's policy is simply to extend criminal liability to one who knowingly and intentionally encourages, assists, or influences a criminal act of another, if the latter's crime is naturally and probably caused by (i.e., is the natural and probable consequence of) the criminal act so encouraged, assisted, or influenced." (*People v. Brigham, supra,* 216 Cal.App.3d at pp. 1052–1053, italics omitted.) Accordingly, the logical and legal impediments to felony-murder liability discussed in *Ireland* are inapplicable and do not limit the liability of an aider and abettor. (See *People v. Luparello* (1986) 187 Cal.App.3d 410, 438 [231 Cal.Rptr. 832].)

II–IV[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 11, 2006, S145529.

---

[*]See footnote, *ante*, page 1172.