[No. D048304. Fourth Dist., Div. One. Mar. 25, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS LEON, Defendant and Appellant.

**Counsel**

Arthur Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Kevin Vienna and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**AARON, J.—**

## I.

### INTRODUCTION

A jury found Jose Luis Leon guilty of burglary (Pen. Code, § 459)[1] (count 1), attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)) (count 2), possessing a concealed firearm in a vehicle while being an active participant in a criminal street gang (§ 12025, subd. (b)(3)) (count 3), and carrying a loaded firearm while being an active participant in a criminal street gang (§ 12031, subd. (a)(1)) (count 4). With respect to each count, the jury found that the crime was gang related within the meaning of section 186.22, subdivision (b)(1). The trial court sentenced Leon to a term of 10 years four months in prison.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

On appeal, Leon claims the evidence is insufficient to support the guilty verdict on count 2, witness intimidation, and insufficient to support the gang sentence enhancements on all counts. In addition, Leon claims that his conviction on count 2, and the gang sentence enhancements, must be reversed because the trial court improperly admitted evidence of his commission of a prior uncharged offense. We reverse the judgment with respect to count 2 on the ground of insufficient evidence, affirm the judgment with respect to the gang enhancements on the remaining counts, and remand for resentencing.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

1. *The People's evidence*

a. *The offenses at 240 Quintard Street*

At approximately 2:00 a.m. on May 11, 2003, Martin Herrera (Martin), his brother, Angel Herrera (Angel), Martin's wife, Laura Limon, and his five-year-old son arrived in the parking lot of Angel's apartment complex at 240 Quintard Street in Chula Vista after a trip to Mexico. As the group began to get out of their rented vehicle, Martin heard a noise and saw two men "messing" with Angel's truck, which was parked nearby. Martin alerted Angel to the presence of the men, and told Limon to take their child inside Angel's apartment and call 911. Limon went into the apartment and called 911.

Angel remained outside and asked one of the men, "Hey, what are you doing there? I'm telling you because it's my truck." The man did not respond to Angel. Angel knew the man had seen him because the man was "ducking" from him. Martin saw this man, later identified as Leon, break the window of a Jetta that was also parked in the parking lot and get inside the car. Angel went to a nearby apartment to alert the owner of the Jetta of the situation.

Martin walked toward Angel's apartment and met Angel as he was returning from the neighbor's apartment. While both Martin and Angel were

standing near the front of Angel's apartment, approximately 173 feet from the parking lot, Martin yelled, "I'm going to call the police. You guys better leave." The second man, later identified as codefendant Javier Rodriguez, looked at Martin and Angel, and fired a gun in the air. After Rodriguez fired the gun, Martin and Angel went inside Angel's apartment.

b. *The arrest and investigation*

Chula Vista Police Officer Joseph Picone responded to Limon's 911 call. As he arrived at the apartment complex, he saw a sport utility vehicle (an Explorer) leaving the parking lot of 240 Quintard Street. Officer Picone followed the Explorer in his police car. After additional units responded to the area, Officer Picone activated his overhead lights. The Explorer pulled over and the passenger, Leon, got out of the car and began to run. After a short chase, Leon stopped and police officers detained him. Police discovered a loaded .22-caliber handgun in Leon's waistband. Leon also had ammunition in his pocket.

Chula Vista Police Officer Randy Smith arrested Rodriguez, who had remained in the driver's seat of the Explorer. Officer Smith discovered ammunition on the floorboard and in the passenger seat of the Explorer. Officer Smith also found a shell casing from a .22-caliber bullet on the passenger seat, and items that had been taken from the Jetta.

At the parking lot of 240 Quintard Street, police recovered a shell casing from a .22-caliber bullet approximately 10 feet from the Jetta. Police also noticed that both the passenger and driver's side windows of the Jetta were broken. There was a brick inside the Jetta, and a tire iron on the ground nearby.

c. *The gang evidence*

Peter Martinez, a criminal investigator assigned to the gang prosecution unit of the San Diego County District Attorney's Office, testified as an expert on gangs. Martinez testified that he was aware of a criminal street gang called Sidro. Sidro has approximately 225 members and is active in the San Ysidro community. Martinez testified that both Rodriguez and Leon were documented Sidro gang members. Martinez stated that crimes such as theft and witness intimidation benefit gangs, and that the use of firearms benefits gangs. He opined that the crimes defendant and Rodriguez committed in this case benefited a criminal street gang.

### 2. *Defense evidence*

Rodriguez testified that he had previously been in the Sidro gang, but that in 1999 he had moved away from San Ysidro because he had "tired of that lifestyle." Rodriguez said that he and Leon were friends, and that he had known Leon since Leon was a little boy. On the night in question, Rodriguez and Leon were drinking and using drugs. They then drove around in Rodriguez's Explorer. Rodriguez claimed that he pulled over in the parking lot of the apartment complex on Quintard Street to urinate. Rodriguez admitted that he broke the windows of a car and fired his gun in the air. However, Rodriguez claimed that he had not planned to burglarize any vehicles and that he did not remember why he fired the gun in the air.

Leon called Officer Smith as a witness. Officer Smith agreed with defense counsel's statement that most of the auto burglaries Smith had investigated had not involved witness intimidation.

### 3. *Rebuttal evidence*

Investigator Martinez testified that the 200 block of Quintard Street was located within the territory of the Otay gang, a rival of the Sidro gang. Martinez further stated that the apartments located at 240 Quintard were known residences of active Otay gang members. Martinez also stated that members of gangs are aware of the boundaries of the territories of rival gangs.

## B. *Procedural background*

In August 2003, the People filed an amended information against Rodriguez and Leon. The People charged Leon with burglary (§ 459) (count 1), attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)), possessing a concealed firearm in a vehicle while being an active participant in a criminal street gang (§ 12025, subds. (a)(1), (b)(3)) (count 3), carrying a loaded firearm while being an active participant in a criminal street gang (§ 12031, subd. (a)(1), (2)(C)) (count 4), and resisting an officer (§ 148, subd. (a)(1)) (count 5). With respect to counts 1 through 4 the People alleged that the crimes were gang related within the meaning of section

186.22, subdivision (b)(1). With respect to counts 1 and 2, the People alleged that Leon had been armed with a firearm within the meaning of section 12022, subdivision (a)(1).

During a jury trial, the People dismissed count 5. The jury found Leon guilty of counts 1 through 4, and found true all of the gang sentence enhancements. With respect to counts 1 and 2, the jury found that Leon had not been armed with a firearm within the meaning of section 12022, subdivision (a)(1).

In March 2006, the trial court sentenced Leon in conjunction with another case. (See pt. III.D., *post.*) In this case, the court sentenced Leon to the middle term of two years on count 2 and an additional five years for the gang sentence enhancement. With respect to counts 1 and 3, the court sentenced Leon to eight months and an additional one year for the gang sentence enhancement on each count. With respect to count 4, the court sentenced Leon to the middle term of three years and an additional three years for the sentencing enhancement and stayed imposition of both terms pursuant to section 654. The court sentenced Leon to a total aggregate term of 10 years four months in this case.

## III.

### DISCUSSION

A. *There is insufficient evidence to support the jury's verdict finding Leon guilty of witness intimidation*

Leon claims the People failed to present sufficient evidence to support the jury's verdict finding him guilty of witness intimidation on an aiding and abetting theory of liability. We agree.[2]

1. *Standard of review*

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "[T]he

---

[2] The People's sole theory at trial and on appeal as to Leon's guilt on count 2 was that he aided and abetted Rodriguez's commission of the crime.

court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

### 2. *Governing law*

#### a. *The crime of witness intimidation*

Section 136.1, subdivision (b) provides in relevant part:

"[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

"(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

#### b. *Aiding and abetting*

"A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime. [Citation.]" (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164 [282 Cal.Rptr. 450, 811 P.2d 742].)

In *People v. Mendoza* (1998) 18 Cal.4th 1114, 1122–1123 [77 Cal.Rptr.2d 428, 959 P.2d 735] (*Mendoza*), the Supreme Court described in greater detail the mental state necessary to aid and abet a crime: " 'All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed.' [Citation.] Accordingly, an aider and abettor 'shares the guilt of the actual perpetrator.' [Citation.] The mental state necessary for conviction as an aider and abettor, however, is different from

the mental state necessary for conviction as the actual perpetrator. [¶] The actual perpetrator must have whatever mental state is required for each crime charged . . . . An aider and abettor, on the other hand, must 'act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] The jury must find 'the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense . . . .' [Citations.]"

■ "Once the necessary mental state is established, the aider and abettor is guilty not only of the intended, or target, offense, but also of any other crime the direct perpetrator actually commits that is a natural and probable consequence of the target offense. [Citation.]" (*Mendoza, supra*, 18 Cal.4th at p. 1123.) "A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen." (CALJIC No. 3.02.) "To trigger application of the 'natural and probable consequences' doctrine, there must be a close connection between the target crime aided and abetted and the offense actually committed." (*People v. Prettyman* (1996) 14 Cal.4th 248, 269 [58 Cal.Rptr.2d 827, 926 P.2d 1013] (*Prettyman*).) ■ "The elements of aider and abettor liability . . . on the natural and probable consequences theory are the following: 'the trier of fact must find that the defendant, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of a predicate or target offense; (3) by act or advice aided, promoted, encouraged or instigated the commission of the target crime. But the trier of fact must also find that (4) the defendant's confederate committed an offense *other than* the target crime; [fn. omitted] and (5) the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted.' [Citation.] The issue 'is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable.' [Citation.]" (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161 [31 Cal.Rptr.3d 643].)

The question whether an offense is a natural and probable consequence of a target offense is to be determined "in light of all of the circumstances surrounding the incident." (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531 [26 Cal.Rptr.2d 323] (*Nguyen*).)

### 3. *There is insufficient evidence that Leon aided and abetted Rodriguez's commission of witness intimidation as a target offense*

Leon claims there is insufficient evidence to support the jury's finding of guilt on count 2 on the theory that he aided and abetted the target offense of witness intimidation. We agree.[3]

The People note that defendant and Rodriguez were members of the same gang, and were burglarizing cars in a rival gang's territory. In addition, Leon was found with ammunition and a firearm in his possession after he and Rodriguez fled the scene of the burglary. The People argue that this evidence, in combination with Leon's action in "*staring* at the person who said he was going to call the police and walking with Rodriguez while Rodriguez shot a gun in the air, encouraged and/or facilitated Rodriguez in his commission of this offense." (Italics added.)

Assuming, without deciding, that a defendant's act of "staring" at a witness who has told the defendant that he is going to call the police could constitute an act sufficient to support a finding of aider and abettor liability, there was no such evidence in this case. Neither Martin nor Angel testified that Leon stared at them. At trial, Martin and Angel agreed with the prosecutor that they were able to "make eye contact" with Rodriguez and Leon. Both Martin and Angel testified that this occurred *before* Martin told Rodriguez and Leon that he was going to call the police. We conclude that this evidence is not sufficient to support a finding that Leon "by act or advice, aid[ed], promote[d], encourage[d] or instigate[d] the commission" of witness intimidation. (*Cooper, supra,* 53 Cal.3d at p. 1164.)

### 4. *There is insufficient evidence that Leon aided and abetted a crime as to which witness intimidation was a natural and probable consequence*

Leon claims there is insufficient evidence to support the jury's finding of guilt on count 2 on the theory that he aided and abetted a target offense for

---

[3] In light of our conclusion, we need not consider whether the prosecutor's apparent abandonment of this theory of liability in her rebuttal closing argument precludes this court from affirming Leon's conviction on count 2 pursuant to such a theory. The prosecutor stated: "In talking about aiding and abetting, [defense counsel] uses the definition of aiding and abetting to talk about the crime charged in count 2 against his client. The People are not proceeding against Mr. Leon on a theory of aiding and abetting. We are proceeding against Mr. Leon on the theory that Mr. Rodriguez committed an act that was a natural and probable consequence of counts 1, 3, and 4."

which witness intimidation was a natural and probable consequence. We agree.

The People claim that we may affirm Leon's conviction for witness intimidation on the theory that Leon aided and abetted either burglary (§ 459) (count 1), or possession of a concealed firearm by an active participant in a criminal street gang (§ 12025, subd. (b)(3)) (count 3), or carrying a loaded firearm by an active participant in a criminal street gang (§ 12031, subd. (a)(1)) (count 4), and that witness intimidation was a natural and probable consequence of one of these target offenses.[4] The People argue that the fact that the crimes were committed by two gang members and that the crimes were committed in a rival gang's territory in the parking lot of an apartment complex where members of the rival gang lived makes witness intimidation a natural and reasonable consequence of counts 1, 3, and 4.

Cases involving the natural and probable consequences doctrine frequently "involve[] situations in which a defendant assisted or encouraged a confederate to commit an assault with a deadly weapon or with potentially deadly force, and the confederate not only assaulted but also murdered the victim." (*Prettyman, supra*, 14 Cal.4th at p. 262.) For example, in *People v. Karapetyan* (2006) 140 Cal.App.4th 1172 [45 Cal.Rptr.3d 245], the court concluded that it was reasonably foreseeable that death was a natural probable consequence of an assault that the defendant aided and abetted, under the following circumstances: "The evidence showed a group of men challenging a single unarmed victim with an assortment of weapons available for their use. Furthermore, the assailant stabbed Andrey with a knife, a deadly weapon. The assailant did not stab Andrey in an insignificant area of his body; instead, the assailant stabbed Andrey in his heart. Defendant denies that this attack on Andrey was a fight to the death. This, however, was an argument for the jury. The jury could infer from the circumstances of the fight that Andrey's death was a foreseeable consequence of the assault." (*Id.* at p. 1177.)

"Other cases applied the 'natural and probable consequences' doctrine in situations where a defendant assisted in the commission of an armed robbery, during which a confederate assaulted or tried to kill one of the robbery victims." (*Prettyman, supra*, 14 Cal.4th at pp. 262–263; see, e.g., *People v. Cummins* (2005) 127 Cal.App.4th 667, 677 [25 Cal.Rptr.3d 860] [noting there "are a number of California cases which hold murder or attempted murder can be a natural and probable consequence of robbery" and concluding that

---

[4] The People note that the jury needed to find only that witness intimidation was a natural and probable consequence of *one* of the three possible target offenses and that members of the jury could *differ* as to which offense constituted the target offense. (*Prettyman, supra*, 14 Cal.4th at pp. 267–268 ["to convict a defendant of a crime under this doctrine, the jury need not unanimously agree on the particular target crime the defendant aided and abetted"].)

the charged attempted murder was a natural and probable consequence of a robbery and carjacking where defendant assisted in marching victim to edge of cliff off of which codefendant pushed victim].)

The People have cited no case, and we are aware of none, in which a court has concluded that the crime of witness intimidation was the natural and probable consequence of either vehicle burglary or illegal possession of a weapon. There is not "a close connection" between any of the target crimes Leon aided and abetted, and Rodriguez's commission of witness intimidation. (*Prettyman, supra,* 14 Cal.4th at p. 269.) In considering "all of the circumstances surrounding the incident" (*Nguyen, supra,* 21 Cal.App.4th at p. 531), the fact that the crimes were gang related and that they were committed in a rival gang's territory clearly increased the possibility that violence would occur. However, witness intimidation cannot be deemed a natural and probable consequence of any of the target offenses.

We conclude that there is insufficient evidence that Leon aided and abetted a crime as to which witness intimidation was a natural and probable consequence. Accordingly, we reverse the guilty verdict on count 2 for insufficiency of the evidence. In light of our reversal, the gang enhancement attached to this count must also be reversed.

B.  *The evidence is sufficient to support the gang sentence enhancements on counts 1, 3, and 4*

Leon claims the People failed to present sufficient evidence to support the gang sentence enhancements on counts 1 through 4.[5] The law regarding appellate review of claims challenging the sufficiency of the evidence in the context of gang enhancements is the same as that governing review of sufficiency claims generally. (See *People v. Vy* (2004) 122 Cal.App.4th 1209, 1224 [19 Cal.Rptr.3d 402].) Accordingly, we apply the standard of review outlined in part III.A.1., *ante.*

1.  *Governing law*

Section 186.22, subdivision (b)(1) provides a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."

---

[5] In light of our reversal of the jury's verdict of guilt with respect to count 2, and the necessary reversal of the accompanying gang enhancement, we need not consider Leon's claim as it pertains to count 2.

In *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [5 Cal.Rptr.3d 615], the defendant and two fellow gang members committed a robbery. On appeal, the defendant argued that there was insufficient evidence to support a gang sentence enhancement pursuant to section 186.22, subdivision (b)(1). The defendant argued that the evidence showed only that the three men belonged to the same gang. The court rejected this claim, concluding that evidence that a gang member has committed a crime with another person whom he knows to be a fellow gang member will ordinarily be sufficient to meet the disjunctively worded elements of section 186.22, subdivision (b)(1):

"Defendant argues that reliance on evidence that one gang member committed a crime in association with other gang members is 'circular . . . .' Not so. Arguably, such evidence alone would be insufficient, even when supported by expert opinion, to show that a crime was committed for the *benefit* of a gang. The crucial element, however, requires that the crime be committed (1) for the benefit of, (2) at the direction of, *or* (3) in *association* with a gang. Thus, the typical close case is one in which one gang member, acting alone, commits a crime. Admittedly, it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members.

"If defendant is arguing that there was insufficient evidence of the specific intent element (as opposed to the benefit/direction/association element), we disagree. Again, specific intent to *benefit* the gang is not required. What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members . . . .' Here, there was evidence that defendant intended to commit robberies, that he intended to commit them in association with Flores and Moreno, and that he knew that Flores and Moreno were members of his gang. Moreover, as we held in part IV, *ante,* there was sufficient evidence that defendant intended to aid and abet the robberies Flores and Moreno actually committed. It was fairly inferable that he intended to assist criminal conduct by his fellow gang members." (*Morales, supra,* 112 Cal.App.4th at p. 1198.)

In *People v. Romero* (2006) 140 Cal.App.4th 15 [43 Cal.Rptr.3d 862], the court employed similar reasoning in concluding that there was sufficient evidence to support a gang enhancement pursuant to section 186.22, subdivision (b)(1) where the defendant drove fellow gang members to the site of a driveby shooting. The court reasoned: "There was ample evidence that appellant intended to commit a crime, that he intended to help Moreno commit a crime, and that he knew Moreno was a member of his gang. This

evidence creates a reasonable inference that appellant possessed the specific intent to further Moreno's criminal conduct." (*People v. Romero, supra*, 140 Cal.App.4th at p. 20.)

2. *The People presented sufficient evidence to support the jury's gang enhancement findings*

In this case, the People presented evidence that Leon committed counts 1, 3, and 4 in association with Rodriguez, a fellow gang member. Thus, the People presented evidence that Leon committed the offenses "in association with any criminal street gang." (§ 186.22, subd. (b)(1).) Further, there was evidence that Leon intended to commit counts 1, 3, and 4, that he intended to commit the offenses in association with Rodriguez, and that he knew Rodriguez was a member of his gang.[6] From this evidence, the jury could reasonably infer that Leon harbored the "specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) In addition, Martinez's expert testimony that Leon and Rodriguez committed the crimes in a rival gang's territory, at an apartment complex in which members of a rival gang were known to live, provided additional evidence supporting the gang enhancement findings. (Compare with *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 [46 Cal.Rptr.3d 839] [finding insufficient evidence to support § 186.22, subd. (b)(1) gang enhancement where "[t]he prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use [a] knife in a gang-related offense"].) We reject Leon's argument that the gang sentence enhancements must be reversed because the People purportedly failed to present sufficient evidence that Leon acted "with the specific intent to benefit the gang," because, as noted above, a "specific intent to *benefit* the gang is not required." (*Morales, supra*, 112 Cal.App.4th at p. 1198.)[7] Accordingly, we conclude that the People presented sufficient evidence to support the gang sentence enhancements as to counts 1, 3, and 4.

---

[6] Rodriguez testified that he had known Leon "since [Leon] was a little boy," and the People presented considerable evidence that both Leon and Rodriguez were Sidro gang members.

[7] The gang enhancements set forth in the information allege that Leon committed the offenses "for the benefit of, at the direction of, *and* in association with a criminal street gang with the specific intent to promote, further, *and* assist in criminal conduct by gang members within the meaning of Penal Code section 186.22, subdivision (b)(1)." (Italics added.) In addition, while the jury instructions tracked the disjunctive language of section 186.22, subdivision (b)(1), the verdict forms referred to the gang enhancements in the conjunctive. Leon does not raise any claim of error with respect to the wording of the amended information and verdict forms, both of which were favorable to the defense.

C. *The trial court committed harmless error in admitting evidence of the true finding as to Leon's prior juvenile robbery*

Leon claims the trial court erred in admitting evidence of his prior juvenile robbery true finding. He contends that the evidence was inadmissible pursuant to Evidence Code section 352 because the probative value of the evidence was substantially outweighed by the probability of undue prejudice. Leon argues that as a result of the error, his conviction for witness intimidation in count 2, and the gang enhancements attached to all four counts, must be reversed.[8]

With respect to the gang enhancements attached to counts 1, 3, and 4, we apply the abuse of discretion standard of review to this claim. (See *People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [113 Cal.Rptr.2d 27, 33 P.3d 450] [applying abuse of discretion standard of review to defendant's claim that the trial court erred in failing to exclude evidence pursuant to Evid. Code, § 352].) We conclude that the trial court committed harmless error in admitting evidence of Leon's prior juvenile robbery adjudication.

### 1. *Factual and procedural background*

On August 4, 2003, the People filed a trial brief in which they stated that Leon had suffered a juvenile true finding for robbery in 1999. The People maintained that evidence of this prior offense was admissible pursuant to Evidence Code section 1101, subdivision (b) for the purpose of proving that Leon had the specific intent to aid and abet gang related activity in committing the charged offenses. With respect to the 1999 offense, the People stated: "The facts of that case reveal a gang-related intent and motive. In the 1999 case the defendant and [three] other Sidro gang members approached a boy on the trolley and demanded his property. When he was reluctant they beat him and took it by force." The People also claimed that evidence pertaining to the 1999 robbery was admissible as a "predicate offense[] establishing [Leon's] documentation as a gang member."[9]

That same day, the trial court held a pretrial hearing. The trial court stated that the parties had discussed in chambers whether the People could establish

---

[8] In light of our reversal of the jury's verdict of guilt with respect to count 2, and the necessary reversal of the accompanying gang enhancement, we need not consider Leon's claim as it pertains to count 2.

[9] In order to prove the section 186.22, subdivision (b)(1) gang sentence enhancements, the People were required to establish that Sidro was a criminal street gang whose members had committed two or more statutorily enumerated offenses within a specified time frame. (See pt. III.C.2.a., *post.*) Further, with respect to the gang member weapon possession offenses charged in counts 3 and 4, the People were required to establish that Leon was a gang member. (See pt. III.C.2.a., *post.*)

the predicate acts necessary to establish the section 186.22, subdivision (b)(1) gang enhancement by way of Leon's commission of a prior offense. Leon's counsel argued that he was not aware of any case in which a court had approved the use of a defendant's commission of a prior offense to prove predicate offenses necessary to establish a gang sentence enhancement. Defense counsel further argued that such evidence was cumulative with respect to the issue of Leon's status as a Sidro gang member because there was an abundance of other evidence that indicated Leon was a Sidro gang member. Defense counsel argued that the possibility of prejudice from admitting evidence of Leon's prior robbery would far outweigh any probative value of the evidence.

In arguing in favor of the admissibility of the uncharged offense, the prosecutor noted that case law established that the People could prove the predicate offenses necessary to demonstrate the existence of a criminal street gang by way of a defendant's commission of the charged offenses. The prosecutor argued that a defendant's commission of crimes, either charged or uncharged, should be admissible to establish the predicate offenses. The prosecutor further noted that Leon's gang membership was an element of counts 3 and 4, so "prejudice as to their gang status [is] really moot." The prosecutor also maintained that the evidence of the prior crimes was admissible pursuant to Evidence Code section 1101, subdivision (b) on the issue of Leon's intent and motive in committing the charged offenses.

After hearing further argument and considering Evidence Code section 352, the court ruled that the People would be allowed to use the evidence of Leon's 1999 robbery for the purpose of establishing the predicate offenses necessary to establish the section 186.22, subdivision (b)(1) gang sentence enhancements and the gang membership elements charged in connection with counts 3 and 4.

The trial court then considered whether the prior offense evidence would be admissible pursuant to Evidence Code section 1101, subdivision (b) for the purpose of proving Leon's motive and intent. The prosecutor stated that she intended to offer evidence pertaining to the 1999 offense to prove Leon's "motive to assist, to aid and abet a fellow gang member." The prosecutor stated that in the 1999 robbery, Leon and three other members of the same gang confronted a person and took his property. Defense counsel argued that the 1999 robbery was not sufficiently similar to the charged offenses to be admissible pursuant to Evidence Code section 1101, subdivision (b).

After hearing counsels' arguments, the trial court said that it had considered the case law regarding Evidence Code section 1101, subdivision (b), and had also considered Evidence Code section 352. The court stated that the

evidence was, "lending more towards propensity evidence, and . . . that it [would] be excluded under [Evidence Code section] 1101, [subdivision] (b)." The court then summarized its evidentiary rulings as follows: "And so to recap, the evidence of the prior[] will be admitted with regard to the gang enhancement, including the predicate acts, and with regards to counts 3 and 4. And the jury will be specifically admonished that it is only admissible for counts 3 and 4, and the [section] 186.22 enhancement. But it will not be permitted to be used as substantive evidence to the [charged] offenses other than counts 3 and [4] because 3 and 4 involve the gang aspect of it."

During the trial, Martinez testified that documented Sidro gang members Octavio Mendoza and Sabas Aldana had suffered robbery convictions in 2001 and 2002 respectively. Martinez also testified that Rodriguez was a gang member and that he had suffered a 1999 residential burglary conviction. Martinez noted that Rodriguez had claimed membership in the Sidro gang to the police on approximately 23 occasions.

Martinez agreed with the prosecutor that Leon, "a documented Sidro gang member," had suffered a true finding on a juvenile charge of robbery in 1999. Defense counsel requested that the court provide a limiting instruction with respect to the jury's consideration of the 1999 robbery. The court instructed the jury that the evidence was admitted, "solely [for] the allegation of Penal Code section 186.22, subdivision (b)(1), attached to each of the counts, as well as counts 3 and 4."

Leon stipulated that he "was previously found to have committed a violation of Penal Code section 211, robbery, by the juvenile court on December 15, 1999 . . . ." The court instructed the jury that it was to consider this evidence only for the purpose of the gang enhancement allegations and counts 3 and 4.

Martinez testified that Leon had approximately 12 contacts with police from the period of June 1999 through April 2003 that had been entered in a database managed by the police for the purpose of monitoring gang activity. Martinez noted that Leon had told police that he was known by the gang moniker, "Sidro Malos." Further, Leon had claimed membership in the Sidro gang to the police on at least two occasions. In addition, Leon had a tattoo on his wrist indicating a gang affiliation. Leon was also found by police to be in the company of other documented gang members on at least four occasions.

During closing argument, in arguing that defendant and Rodriguez were active gang members, the prosecutor stated that one of them "had a prior conviction in juvenile court for robbery committed with other Sidro gang members." Defense counsel objected, stating that there was no evidence

concerning who Leon's companions were during the robbery. The court responded by instructing the jury, "Ladies and gentlemen, you are the judges of the facts. And what you may regard is that prior [true] finding."

The court instructed the jury that it was to consider the evidence of other crimes committed by defendant and Rodriguez for the limited purpose of determining whether "the defendants are active participants in a criminal street gang."

### 2. Governing law

#### a. The purpose for which the People offered evidence of the juvenile robbery true finding

In order for Leon to be subject to a gang sentence enhancement pursuant to section 186.22, subdivision (b), the People were required to prove that the crimes charged in the instant case were committed "for the benefit of, at the direction of, or in association with any *criminal street gang*." (§ 186.22, subd. (b)(1), italics added.) A "criminal street gang" (§ 186.22, subd. (f)) is defined generally as an organization having as one of its primary activities the commission of one or more enumerated offenses, having a common name or symbol, and whose members individually or collectively have engaged in the commission or attempted commission of two or more enumerated offenses.[10]

Both section 12025, subdivision (b)(3) (count 3) and section 12031, subdivision (a)(2)(C) (count 4) required the People to establish that Leon was an "active participant in a criminal street gang."

#### b. The law governing the admissibility of uncharged offense evidence

Evidence Code section 1101 provides:

---

[10] Section 186.22, provides in relevant part: "(e) As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons: [providing a list of enumerated crimes including robbery (§ 211) and burglary (§ 459)] [¶] (f) As used in this chapter, 'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

"(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

■ It is well established that uncharged offense evidence otherwise admissible pursuant to Evidence Code section 1101, " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352. [Citations.]' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [27 Cal.Rptr.2d 646, 867 P.2d 757] (*Ewoldt*), superseded by statute on other grounds, as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505 [128 Cal.Rptr.2d 290].)

The Supreme Court has repeatedly stressed that "evidence of uncharged misconduct ' "is so prejudicial that its admission requires extremely careful analysis." ' " (*People v. Lewis* (2001) 25 Cal.4th 610, 637 [106 Cal.Rptr.2d 629, 22 P.3d 392], quoting *Ewoldt, supra,* 7 Cal.4th at p. 404; e.g., *People v. Medina* (1995) 11 Cal.4th 694, 748 [47 Cal.Rptr.2d 165, 906 P.2d 2].) Since " 'substantial prejudicial effect [is] inherent in [such] evidence,' uncharged offenses are admissible only if they have *substantial* probative value. If there is any doubt, the evidence should be excluded. [Citation.]" (*People v. Thompson* (1980) 27 Cal.3d 303, 318 [165 Cal.Rptr. 289, 611 P.2d 883], fn. omitted, overruled on another ground in *People v. Rowland* (1992) 4 Cal.4th 238, 260 [14 Cal.Rptr.2d 377, 841 P.2d 897]; see also *People v. Haston* (1968) 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91] [other crimes evidence " 'should be received with "extreme caution," and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused' "].) For example, in *Ewoldt* the Supreme Court emphasized that where uncharged offense evidence is cumulative, it will often

be inadmissible pursuant to Evidence Code section 352. (*Ewoldt, supra,* 7 Cal.4th at pp. 405–406 ["In many cases the prejudicial effect of such evidence [offered to show a common design or plan] would outweigh its probative value, because the evidence would be merely cumulative regarding an issue that was not reasonably subject to dispute."].)

### 3. *The trial court erred in admitting evidence of Leon's prior juvenile robbery adjudication*

In this case, the prosecutor had ample evidence apart from Leon's 1999 juvenile offense to establish both that Sidro was a criminal gang and that Leon was a gang member. With respect to Sidro's status as a criminal gang, the People do not argue that the robbery convictions of Aldana and Mendoza were in any way insufficient to establish the necessary predicate offenses. The evidence of Leon's status as a gang member was similarly overwhelming. Thus, the evidence of Leon's 1999 robbery adjudication was "merely cumulative regarding an issue that was not reasonably subject to dispute." (*Ewoldt, supra,* 7 Cal.4th at p. 406.) Further, as with virtually any uncharged offense, the likelihood of prejudice from allowing the jury to hear that Leon had previously committed a robbery was high.

Although the trial court could have reasonably concluded that evidence of Leon's 1999 commission of a robbery with other gang members[11] was relevant to establish that Sidro was a criminal gang and that Leon was a gang member, in light of the other overwhelming evidence establishing both of these facts, the trial court abused its discretion in admitting evidence concerning the uncharged offense evidence.

### 4. *The error was harmless*

Leon claims the improper admission of the uncharged offense evidence requires reversal of the gang enhancements attached to counts 1, 3, and 4. The improper admission of uncharged offense evidence is reviewed under the standard of prejudice established in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*). (*People v. Felix* (1993) 14 Cal.App.4th 997, 1007–1008 [18 Cal.Rptr.2d 113].) Thus, we must determine whether it is "reasonably probable that a result more favorable to [Leon] would have been reached in the absence of the error . . . ." (*Watson, supra,* 46 Cal.2d at p. 837.)

---

[11] The prosecutor's offer of proof indicated that Leon committed the 1999 robbery offense with other gang members. The court was entitled to consider this asserted fact in ruling on the admissibility of the evidence during the pretrial hearing. However, at trial, the People did not present evidence that the 1999 robbery was gang related.

As noted in part III.B., *ante*, the People presented overwhelming evidence that Leon committed counts 1, 3, and 4 in association with Rodriguez, a fellow gang member, and, therefore, "in association with any criminal street gang." (§ 186.22, subd. (b)(1).) Further, in light of Leon's relationship with Rodriguez, there was considerable evidence that Leon acted with the "specific intent to promote, further, or assist in any criminal conduct by gang members." (*Ibid.*)

Leon's primary argument with respect to prejudice is that there was little evidence presented at trial that he was acting "for the benefit of the gang" in committing the charged offenses. In support of this argument, Leon notes that the limiting instruction the court gave during the trial suggested that the jury could consider the evidence for the purpose of determining whether Leon had the specific intent to benefit a gang in committing the charged offenses. However, as noted in part III.B., *ante*, the People were not required to prove that Leon was acting for the benefit of the gang in order to establish the applicability of the enhancement.

Accordingly, while the admission of the uncharged offense evidence carried with it the *possibility* of great prejudice, in light of the strong evidence that Leon committed the offenses "in association with [a] criminal street gang" and with the "specific intent to promote, further, or assist . . . criminal conduct by gang members" (§ 186.22, subd. (b)(1)), we conclude that it is not reasonably probable that a more favorable result would have been reached but for the trial court's error.

### D. *The matter must be remanded for resentencing*

The trial court ordered the sentence imposed in this case (*People v. Leon* (Super. Ct. San Diego County, 2006, No. SCS176087)) (SCS176087) to be served consecutively to the sentence imposed in another case (*People v. Leon* (Super. Ct. San Diego County, 2006, No. SCS179354)) (SCS179354). Leon filed a separate appeal in SCS179354 (*People v. Leon* (Mar. 25, 2008, D048306) [nonpub. opn.]) (D048306). We ordered the appeal in D048306 to be considered with the appeal in this case (D048304). We are affirming the judgment in D048306 by way of a separate opinion that we file simultaneously with this opinion.

In light of the fact that the sentences in D048306 and in this case stem from the same final judgment, and in light of our disposition of this appeal, we must remand the matter for resentencing in both cases. At resentencing, in SCS179354, the trial court is directed to resentence Leon on counts 1 and 2. At resentencing, in SCS176087, the trial court is directed to resentence Leon on counts 1, 3, and 4.

## IV.

## DISPOSITION

The judgment is reversed with respect to count 2. In all other respects, the judgment is affirmed. The sentence is vacated and the matter is remanded for resentencing in accordance with our directions in part III.D., *ante.*

Huffman, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied April 14, 2008, and the opinion was modified to read as printed above. The petitions of both appellant and respondent for review by the Supreme Court were denied July 25, 2008, S163204. George, C. J., and Corrigan, J., did not participate therein. Moreno, J., was of the opinion that appellant's petition should be granted.