Filed 3/14/14  P. v. Karapetyan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071525 |
| Plaintiff and Respondent, | (Super. Ct. No. 03F07499) |
| v. | |
| DANIEL KARAPETYAN, | |
| Defendant and Appellant. | |

Defendant Daniel Karapetyan pleaded no contest to voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and admitted an enhancement for being armed with a deadly weapon during the commission of the offense (§ 12022, subd. (b)(1)).  The trial court sentenced him to an upper term of 11 years for voluntary manslaughter plus one year for

---

[1] Undesignated statutory references are to the Penal Code.

1

the weapon enhancement, for a total term of 12 years in state prison.  Defendant timely filed this appeal.

On appeal, defendant contends the trial court relied on improper aggravating circumstances and failed to consider and give adequate weight to all the mitigating circumstances in imposing an upper term for voluntary manslaughter.  We disagree and shall affirm the judgment.

## BACKGROUND

*The Killing*

On December 2, 2003, between 9:30 p.m. and 11:00 p.m., Gagik Karapetyan (Gagik),[2] his son-in-law Ararat Manukyan, and Isaak Ambaryan were having a barbecue near a motor home on the property of an automobile auction yard where they worked.  Andrei Tsurkanu and Sergey Melnichuk also worked there and were there at the time.  Melnichuk looked inside the motor home, which caused Gagik to say something derogatory to him.  Tsurkanu immediately came to Melnichuk's defense and got into an argument with Gagik.  Manukyan was holding a knife and Ambaryan threatened to kill Tsurkanu.

Three people, including Tsurkanu's stepbrother, arrived during the argument.  The owner of auction yard then asked everyone to leave.  The men agreed to "take the argument elsewhere"--to a nearby parking lot.  At some point, Tsurkanu telephoned an acquaintance and said there would be a fight, and he was expecting trouble from Gagik and his sons.

At the parking lot, Manukyan set down his knife and gestured to Tsurkanu that everything was okay.  One of Tsurkanu's friends handed him a small wooden baseball bat, which Tsurkanu set to the ground and never used.

---

[2] Defendant, his brother Yegiazar, and their father Gagik share the same last name.  We refer to Yegiazar and Gagik by their first names to avoid confusion.

2

Gagik's sons, defendant, and Yegiazar arrived soon after. As soon as defendant and Yegiazar approached Gagik, the three of them began punching and kicking Tsurkanu. Gagik pulled out a large-barreled pistol and used it to hit Tsurkanu about the head, chest, and back.

Tsurkanu broke away and tried to escape by running to one of the parked vehicles. Defendant, Gagik, and Yegiazar pursued. Manukyan later reported that Gagik had the pistol, Yegiazar had a screwdriver, and defendant had a knife. Tsurkanu eventually fell down and was surrounded by his pursuers. Tsurkanu's friends said they could not assist him once Gagik produced the pistol. They rushed to Tsurkanu's aid after the Karapetyans left the scene. They called the police and Tsurkanu was later declared dead.

One of Tsurkanu's friends admitted Tsurkanu summoned him to the location, saying he was "having a problem with them (the Karapetyans) and (was) going to beat the shit out of them, can you come?" (Emphasis omitted.)

An autopsy indicated the cause of death was two stab wounds, one through the chest which penetrated the aorta, and another through the back which struck a lung. There were also superficial stab wounds and puncture wounds; some of the puncture wounds appeared to have been inflicted with a Phillips screwdriver. Other superficial wounds about the head, chest, and neck could have been caused by being struck with a handgun.

Gagik turned himself into authorities on September 10, 2003, and confessed to the killing. He was subsequently tried and convicted of second degree murder and sentenced to 15 years to life in prison; we affirmed his conviction. (See *People v. Karapetyan* (2006) 140 Cal.App.4th 1172, 1174-1175.) Defendant was arrested in Belgium on a warrant in March 2011.

*Plea and Sentencing*

Defendant pled no contest to voluntary manslaughter with an enhancement for use of a dangerous weapon. Per the plea agreement, he faced a sentence of between seven

3

and 12 years. Defendant's trial counsel filed a sentencing memorandum which asserted defendant was struck in the head from behind by a third party just before he started to fight Tsurkanu. The memorandum also claimed Tsurkanu stabbed defendant in the arm with a knife, which defendant then pulled out of his arm and used on Tsurkanu "in a fit of rage."

The memorandum also claimed that defendant's father "was a violent man who constantly threatened, intimidated, and subjected his family to physical violence." Defendant was physically abused by his father from an early age, but his Armenian culture prevented him "from taking a firm stand against his father or publicly reproaching him."

According to the memorandum, defendant was a hard-working young man who planned to start a business after graduating from high school. The memorandum also expressed defendant's regret for the incident and that he willingly took responsibility for what happened. It asked the court to take into consideration defendant's youth,[3] lack of criminal record, the "singular nature of this tragic event," and that the conviction would bar him from "ever again entering the United States."

The memorandum concluded by setting forth the following mitigating circumstances: the victim was a willing participant in the incident; the crime was committed under unusual circumstances and therefore unlikely to reoccur; defendant participated under conditions of coercion or distress; defendant was motivated by a desire to provide necessities for his family and himself; defendant suffered from repeated and continuous physical and psychological abuse by his father; and defendant had no prior criminal record, acknowledged his wrongdoing, and had he been eligible for probation, it likely would have been granted. It concluded by asking for a seven-year sentence, the

---

[3] Defendant was 19 years old at the time of the crime.

4

midterm of six years, plus one year for the enhancement. The probation report recommended the same sentence.

Before sentencing defendant, the trial court stated it "reviewed and carefully considered all the materials submitted to it in this matter." It recognized the "discrepancies in the versions that appear in the facts presented to the court today," and that this was a "difficult situation." The court imposed the 11-year upper term for voluntary manslaughter "because of the seriousness of the offense, the fact that the crime involved great violence, because defendant engaged in violent conduct indicating he's a danger to society," and defendant evaded "responsibility in this case for approximately eight and a half years." The trial court found these aggravating factors outweighed the mitigating factors in defendant's case, including defendant's age and no prior criminal record.

The trial court then imposed a consecutive one-year term for the weapon enhancement, for a total term of 12 years. Trial counsel voiced no objection to the court's consideration of the sentencing factors.[4]

## DISCUSSION

### I

### *Aggravating Factors*

Defendant contends the trial court relied on improper aggravating factors to impose an upper term for voluntary manslaughter. Specifically, he claims the trial court erred in relying on the factors that the offense involved "great violence" (Cal. Rules of

---

[4] Because no objection to the trial court's findings regarding aggravating and mitigating circumstances was voiced at the time of sentencing, any claim of sentencing error concerning these considerations is forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) We reach the merits of defendant's claims only in response to his claim of ineffective assistance of counsel. Because, as we explain, we find no merit in defendant's claims of sentencing error, it follows that trial counsel was not ineffective in failing to voice these same claims of error in the trial court.

Court, rule 4.421(a)(1))[5] and defendant engaged in violent conduct indicating he is a danger to society (rule 4.421(b)(1)) because defendant "did not engage in violent or serious conduct over and above that inherent in the stabbing that constitutes the charged offense itself." We disagree.

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court . . . . The court shall select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b).) We review the trial court's sentencing choice for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847-848.)

Aggravating factors are factors that make a crime "distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110.) Accordingly, facts that are more egregious than whatever is necessary to establish the offense may properly establish an aggravating factor or factors. (See *People v. Miranda* (1987) 196 Cal.App.3d 1000, 1003.) "Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

Defendant claims there is no evidence he "engaged in needless, excessive violence above that necessary to effect the killing." Claiming there is no evidence he even inflicted the fatal blow, he thus concludes the crime did not involve great violence under rule 4.421(a)(1). He argues his crime does not show he was a danger to society under rule 4.421(b)(1) because: the crime was no more violent than the standard voluntary manslaughter; defendant committed the offense when he was 19; he did not plan the fight but was induced into participating by his father; the victim was a willing participant at least initially; and defendant, who only came to defend his father, did not contemplate or

---

[5] Subsequent rule references are to the California Rules of Court.

intend to cause serious injury or death. Since the only other aggravating factor listed by the trial court, the "seriousness" of the offense, is not a valid aggravating factor, defendant concludes the trial court committed reversible error in imposing the upper term.

Voluntary manslaughter is a killing without malice, and of two kinds, (1) by statute, a killing "upon a sudden quarrel or heat of passion" (§ 192, subd. (a)); or (2) imperfect self-defense, killing during an unreasonable belief in the need to use deadly force in self-defense (see *In re Christian S.* (1994) 7 Cal.4th 768, 771, 773). It is a form of mitigated murder.

Defendant and two of his relatives attacked the unarmed victim with deadly weapons. They pursued their victim when he tried to escape the attack, and continued the attack after catching up with him and rendering him helpless on the ground. That the victim initially sought to fight defendant's father is of minimal import given these subsequent happenings. The minimal evidence of provocation or imperfect self-defense, when combined with the brutal nature of the killing--three armed men attacking, then pursuing, and finally beating and stabbing to death their unarmed victim--amply supports the trial court's finding that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Rule 4.421(a)(1).) Likewise, the facts contained in the probation report support the finding that defendant "engaged in violent conduct that indicates a serious danger to society." (Rule 4.421(b)(1).) The trial court did not err in relying on these aggravating factors when imposing the upper term.

## II

### *Mitigating Circumstances*

Defendant contends the trial court erred by failing to consider and give adequate weight to all of the mitigating circumstances. Defendant bases his claim on the trial

7

court's failure to address each of the mitigating factors listed by trial counsel and the probation report when pronouncing sentence.

" 'A trial court may minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.] Further, unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules." (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.)

The trial court stated it had read all of the submitted materials as well as considered all of the arguments and statements presented at the sentencing hearing. It later indicated specifically that it had considered all mitigating factors, including defendant's youth at the time of the offense and lack of a prior record. There is no evidence the trial court failed to consider the mitigating evidence presented--the sentencing record is to the contrary. Defendant has failed to carry his burden to show error.

## DISPOSITION

The judgment is affirmed.


_____ DUARTE _____, J.


We concur:


_____ MAURO _____, Acting P. J.


_____ MURRAY _____, J.

8