Filed 3/21/13  P. v. Guzman CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CHRISTIAN GUZMAN et al., Defendants and Appellants. | B239850 (Los Angeles County Super. Ct. No. TA117370) |

APPEALS from judgments of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Affirmed.

Katharine Eileen Greenebaum, under Appointment by the Court of Appeal, for Defendant and Appellant, Christian Guzman.

Kevin D. Sheehy, under Appointment by the Court of Appeal, for Defendant and Appellant, Agustine Edgar Cuevas.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and William N. Frank, Deputy Attorneys General, for Respondent.

_____

Christian Guzman and Agustine Edgar Cuevas appeal from the judgments entered after a jury convicted them of assault with a firearm and other crimes committed for the benefit of a criminal street gang. We remand to correct a sentencing error conceded by the Attorney General, but otherwise affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Guzman was charged by amended information with making a criminal threat (Pen. Code, § 422) (count 1),[2] carrying a concealed firearm (§ 12025, subd. (a)(2)) (count 2) and assault with a firearm (§ 245, subd. (a)(2)) (count 4) with special allegations the crimes had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A) & (b)(1)(C)) and he had personally used a firearm in committing the offenses charged in counts 1 and 4 (§ 12022.5, subd. (a)). Cuevas was charged with making a criminal threat (count 1), the unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) (count 3) and assault with a firearm (count 4) with special allegations the crimes had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A) & (b)(1)(C)) and a principal had been armed with a firearm in connection with counts 1 and 4 (§ 12022, subd. (a)(1)). Guzman and Cuevas pleaded not guilty.

2. *Summary of the Evidence Presented at Trial*

   a. *The People's evidence*

Luis Estrada was collecting admission fees at a party in Watts after midnight on March 26, 2011 when Guzman, Cuevas and three other men approached. Estrada testified, after he had repeatedly refused Guzman's demand his group be admitted free, Guzman said, "Let us in or I'm going to shoot you." Estrada felt something cold and

---

[1]    In addition to the sentencing error discussed in our opinion, the Attorney General acknowledges the minute order entered following Guzman's and Cuevas's convictions and the abstracts of judgment should be corrected to state the statutory basis for the five-year criminal street gang enhancement is Penal Code section 186.22, subdivision (b)(1)(B), not (b)(1)(C).

[2]    Statutory references are to the Penal Code unless otherwise indicated.

metallic pressed against his stomach. Cuevas, who was standing inches behind Guzman, said, "Step aside if you don't want to get shot." During the confrontation Estrada heard someone say the group would not pay because "this is our hood,"[3] and announce a gang name "South Side Watts." The group then pushed Estrada aside and barged into the party. Estrada told the disc jockey to stop the party because he did not want anyone to get hurt. As people began to leave, Estrada saw a white truck, driven by Cuevas, spinning its tires before driving off.[4]

Justin Mancillas was standing about 10 feet away from Estrada when he saw Guzman "had [Estrada] against the fence." Guzman and the four men with him appeared to Mancillas to be gang members: They wore baggy clothes, and one had tattoos. Mancillas initially denied he had told friends and officers who responded to the scene that Guzman had a gun. Upon further questioning on direct examination, Mancillas acknowledged he had testified at the preliminary hearing he saw Guzman point a black gun at Estrada and explained he was afraid to testify at trial. Mancillas then testified he did see Guzman pointing a gun toward Estrada's stomach "from the side angle." However, during cross-examination by Cuevas's counsel Mancillas clarified he did not actually see the gun. Rather, he saw Guzman first reach his right hand to his waist band and then raise his arm toward the front of his body; Mancillas assumed, and Estrada told him, Guzman had a gun. Mancillas told his friend to call the police.

---

[3]    Estrada initially testified he did not know who made this comment, but later testified it was Guzman.

[4]    We deny Cuevas's request to take judicial notice of information in an ABC news story and Wikipedia about the effect of nitrous oxide, which some witnesses testified Estrada had been using despite his denial. Even if the information is properly subject to judicial notice (see Evid. Code, § 452, subd. (h) ["facts and propositions that are not reasonably subject to dispute and . . . capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]) and bears directly on Estrada's credibility, as Cuevas contends, "'it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth of falsity of the facts upon which a determination depends.'" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Los Angeles Police Officer Mario Leonidas testified he saw a white truck spinning its tires when he and his partner arrived at the scene. Estrada and Mancillas flagged down Leonidas, telling him, "Those two guys in the car pointed guns at us." Leonidas pursued the white truck, which had driven away. After detaining Cuevas, who was driving, and the passenger, Yony Lima, Leonidas returned to the scene and located Mancillas. Mancillas then identified Guzman, who was leaning on an SUV parked in a driveway, as the assailant with the gun. Leonidas saw Guzman place a revolver between the tire and wheel well as he was looking at him. Leonidas and another officer immediately approached, recovered a blue steel revolver loaded with five rounds of ammunition and detained Guzman. Six more rounds of ammunition were recovered from the floorboard of the white truck Cuevas had been driving.

Los Angeles County Sheriff's Deputy Chris Mezzano, testifying as a gang expert, explained he was assigned to a gang unit that monitors the Florencia 13 criminal street gang, one of the largest gangs in Los Angeles County. The gang has numerous rivals, including the South Side Watts,[5] which claims as its territory the area where the party occurred. Mezzano opined Guzman was a member of the "Termite" clique of Florencia 13 based on several facts, including that he had "F-13" tattooed on his left wrist and "Los Termites" tattooed on his neck, had been served with a criminal street gang injunction issued against members of Florencia 13, and had been arrested twice with another Florencia 13 gang member. Mezzano testified he believed Cuevas was an Florencia 13 gang member based on the "SC" tattoo on his arm, which, although not necessarily related to a gang, is a common tattoo for members of Florencia 13, and his association with other Florencia 13 gang members, including Juan Lozano, one of the people who had confronted Estrada.[6] Mezzano opined Guzman and Cuevas had committed their

---

[5]    "South Side" denotes Hispanic gangs.

[6]    "SC" denotes the South Central area of Los Angeles. Lozano, who was also served with the criminal street gang injunction against Florencia 13 members, had F-13 tattooed on his chest and SC on his wrist.

crimes to benefit the Florencia 13 gang: By going to a party as a group in South Side Watts territory and threatening the doorman after he refused to let them in free, they were sending a message that Florencia 13 was to be feared, permitting its members to do what they want. By threatening to shoot the doorman, they were enhancing their individual reputations in the gang. Additionally, by concealing a firearm, they were making the firearm available to any gang member who may want to use it should the need arise.

Acknowledging the only gang name announced was South Side Watts, not Florencia 13, Mezzano conceded on cross-examination gang members would not shout out a rival gang name in order to gain notoriety for their own gang. Nonetheless, minimizing the significance of the apparent contradiction, Mezzano explained, "When they commit crimes, they don't want to be directly associated with the crime. . . . So it's not uncommon and it does happen. And I've investigated cases where oftentimes gang members will shout out a rival gang's name after they commit a crime because they don't want the attention to come right back on them."[7] Mezzano further explained, "[P]eople at that party or wherever that's occurring, [for] the most part, have an idea who they are. I mean, the fact that they yell out a rival's name doesn't necessarily mean they're not trying to put their gang out there, they're not putting in work for the gang. It actually helps them amongst each other, it gives them bragging rights, look what we did for Florencia, you know, them going out there [committing violent crimes] together."

b. *The defense evidence*

Guzman admitted he is a member of the Termite clique of the Florencia 13 gang and the gun and bullets recovered were his. He testified he went to the party with some

---

[7]     Los Angeles Police Detective Patrick Flaherty, one of the investigating officers, testified primarily about the white truck Cuevas had been driving. During cross-examination and on redirect, however, Flaherty, who was then assigned to a gang impact team, was asked about Florencia 13 and gang member behavior generally. Flaherty testified it would be unlikely a Florencia 13 gang member would go into another gang's territory and claim a different gang. But, he added, "in the past, throughout some of my investigations, there have been times where gangsters will pose as their rival gangsters to get in to do shootings, and that's happened on a number of occasions that I can remember."

friends to have a good time, and his brother dropped him off. While he was waiting in line, Guzman heard people in front of him say they would not pay to get into a party in their "hood," "South Side Watts." He knew they were members of a rival gang, but he could not leave because his brother had left; so he walked in behind the rival gang members without paying. Realizing he was "in the wrong place," Guzman called his brother to pick him up. While he was waiting outside, Guzman saw Lima, who he knew was a fellow Florencia 13 gang member, in the white truck. Lima agreed to give Guzman a ride. However, before they drove away, Guzman's brother arrived. Guzman got out of the truck, leaving behind bullets he had taken out of his pocket. Guzman then saw the police, panicked and put the gun in the wheel well of the SUV. Guzman testified he would not claim "South Side Watts" because "it's not even my hood" and he "could get beaten up or even killed" if his fellow gang members ever found out he was doing that.

Cuevas testified his girlfriend called, asking him to pick her up from the party after midnight. She sounded afraid and said people were fighting. Cuevas called Lima, an old friend and a Florencia 13 gang member, to accompany him because he felt more comfortable with him there. Cuevas borrowed the white truck and left Lima in it while he got into line. Suddenly, "everybody just burst into the party," and Cuevas followed. After the music stopped, Cuevas went outside where he saw Guzman talking to Lima. Cuevas claimed he did not know Guzman. As Lima asked Cuevas if they could give Guzman a ride, Guzman's brother arrived; and Guzman left. For "fun," Cuevas decided to "show off and burn . . . my tires" after seeing other cars do the same. Police officers pulled over the truck shortly thereafter. Cuevas denied he was a member of a gang and insisted he got his "SC" tattoo because he was a fan of USC football.

Lima admitted he is a member of the Malditos clique of Florencia 13. He testified he and Cuevas had been best friends since high school but Cuevas was not a member of the gang. Lima's description of his and Cuevas's presence at the scene was largely consistent with Cuevas's.

3. *The Trial Court's Ruling No Instruction on Simple Assault Was Warranted*

After informing counsel it would instruct the jury on assault with a firearm, the trial court indicated it did not intend to instruct on the lesser included offense of simple assault because the defendants' theory of the case was "the witnesses in this matter were confused as to who they saw complete this action or do whatever was done out there . . . ." Defense counsel confirmed the court's understanding. The court ruled, "So under [*People v. Breverman* (1998) 19 Cal.4th 142 (*Breverman*)], I think that they're either going to find it was an assault that was done [by] one or both of the defendants, or it's nothing at all, or its going to be not guilty. So I think under *Breverman*, I don't believe that it would be appropriate to give a misdemeanor instruction of simple assault." Defense counsel did not object.

4. *The Jury's Verdict and Sentencing*

The jury found both Guzman and Cuevas guilty on all counts and found true the special allegations. The trial court sentenced Guzman to an aggregate state prison term of 17 years, comprised of the low term of two years for assault with a firearm plus the high term of 10 years for the firearm enhancement plus five years for the criminal street gang enhancement. Sentence for making a criminal threat and carrying a concealed firearm was imposed and stayed pursuant to section 654. The court sentenced Cuevas to an aggregate state prison term of eight years eight months, comprised of the low term of two years for assault with a firearm plus one year for the firearm enhancement, plus eight months for the unlawful taking of a vehicle, plus five years for the gang enhancement. Sentence for making a criminal threat was imposed and stayed pursuant to section 654.

## CONTENTIONS

Cuevas contends the trial court committed prejudicial error by failing to instruct the jury on assault as a lesser included offense of assault with a firearm and the firearm enhancement should be stricken as unauthorized. Guzman contends there was insufficient evidence the crimes were committed for the benefit of a criminal street gang.

7

## DISCUSSION

1. *The Decision Not To Instruct on Simple Assault Was Not Prejudicial Error*

The trial court in a criminal case has a duty to instruct on general principles of law applicable to the case (*People v. Blair* (2005) 36 Cal.4th 686, 745), that is, "'"'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'"'" (*People v. Valdez* (2004) 32 Cal.4th 73, 115.) This obligation includes the duty to instruct on a lesser included offense if the evidence raises a question whether the elements of the lesser included offense, but not the greater offense, are present. (*Ibid.*; *Breverman*, *supra*, 19 Cal.4th at p. 154.) The duty "arises even against the defendant's wishes, and regardless of the trial theories or tactics the defendant has actually pursued." (*Breverman*, at p. 162.) However, the existence of "'*any* evidence, no matter how weak'" will not justify instructions on a lesser included offense. There must be "'evidence that a reasonable jury could find persuasive.'" (*Ibid.*; see *Blair*, at p. 745 ["[t]o justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist"].) In addition, the failure to instruct on a lesser included offense in noncapital cases is "at most, an error of California law alone" requiring reversal only when "an examination of the entire record establishes a reasonable probability the error affected the outcome." (*Breverman*, at p. 165.)

Cuevas contends the trial court had a duty to instruct on simple assault as a lesser included offense of assault with a firearm because Mancillas's testimony presented "two materially divergent stories": First, Mancillas testified he never saw a gun, but only heard about it from Estrada. Later, Mancillas testified he saw Guzman make motions consistent with the raising of a firearm and assumed he had one, which Estrada subsequently confirmed. Cuevas argues Mancillas's inconsistent testimony constituted sufficient evidence to support a jury finding Guzman assaulted Estrada without using a firearm. Thus, Cuevas aided and abetted only a simple assault.

8

No simple assault instruction was warranted. The evidence was overwhelming a gun was used in the assault: Guzman admitted he brought a gun to the party; Estrada testified Guzman and Cuevas threatened to shoot him and he felt a cold, metallic object pressed against his stomach. Mancillas only briefly maintained at trial he did not see a gun and readily explained when confronted with his contrary testimony at the preliminary hearing, he was afraid to testify at trial. He then admitted he believed Guzman had a gun because he saw motions consistent with the raising of a gun. Mancillas's initial statement he only heard about the gun from Estrada, standing alone, is simply not sufficient evidence from which a reasonable jury could conclude an assault occurred without the use of a firearm. Even if an instruction on simple assault was arguably justified, moreover, on the record here there is no reasonable probability Cuevas would have benefitted from it. (See *Breverman*, *supra*, 19 Cal.4th at p. 165.)

2. *Sufficient Evidence Supports the True Finding on the Gang Enhancement*

To obtain a true finding on a gang enhancement allegation, the People must prove the underlying offense was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) This, in turn, requires proof of two related elements: First, there must be evidence the underlying felony was "committed for the benefit of, at the direction of, or in association with any criminal street gang." Second, there must be evidence the defendant had "the specific intent to promote, further, or assist in *any* criminal conduct by *gang members*." (*People v. Albillar* (2010) 51 Cal.4th 47, 51 (*Albillar*); *People v. Gardeley* (1996) 14 Cal.4th 605, 615-616.)[8]

Emphasizing that Estrada and Mancillas testified someone identified South Side Watts, not Florencia 13, and no one displayed a gang sign or indicated in any way a gang motive, Guzman contends there was insufficient evidence to support the jury's true

---

[8] Guzman does not challenge the sufficiency of the evidence to establish Florencia 13 was a criminal street gang.

finding because the crimes committed did nothing to enhance his own reputation within the gang or otherwise benefit Florencia 13.[9] Guzman correctly observes not every crime committed by a gang member is a gang-related crime for purposes of section 186.22, subdivision (b)(1) (see, e.g., *Albillar, supra,* 51 Cal.4th at p. 60; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198) and "something more than an expert witness's unsubstantiated opinion that a crime was committed for the benefit of, at the direction of, or in association with any criminal street gang is required to justify a true finding on a gang enhancement." (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 660.)[10]

Viewing the evidence in the light most favorable to the judgment, as we must, it is sufficient to support the gang enhancement. The first element may be established by substantial evidence the crime was committed "in association with" a criminal street gang, that is, that two or more gang members committed the crime together, unless there is evidence that they were "on a frolic and detour unrelated to the gang." (*People v. Morales, supra,* 112 Cal.App.4th at p. 1198 [absent evidence of frolic and detour, "jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members]; accord, *People v. Leon* (2008) 161 Cal.App.4th 149, 162; see *Albillar*, *supra*, 51 Cal.4th at p. 62 [when

9       "In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*Albillar, supra,* 51 Cal.4th at pp. 59-60.)

10      Guzman also argues Estrada weighed a mere 95 pounds, so it is difficult to understand how Guzman or the gang could benefit from the assault of such a small man; and, although Estrada and Mancillas testified they thought Guzman and his confederates were gang members, they did not know to which gang they belonged.

evidence establishes defendants came together as gang members to attack the victim, jury properly found they committed the crime in association with the gang].) The evidence is unassailable Guzman committed the crimes with other Florencia 13 gang members: Lima admitted his membership in the gang, and there was strong evidence Lozano and Cuevas were members of Florencia 13 as well. As for the frolic-and-detour contention, the jury, as it was permitted to do, rejected Guzman's testimony he simply went to the party to have fun and Cuevas and Lima's testimony they went to the party to pick up Cuevas's girlfriend—the only evidence offered of activity that might be unrelated to the gang. In addition, Deputy Mezzano explained how the crimes benefitted Florencia 13's reputation in the community—and the gang members status in the gang— notwithstanding they did not announce the name of the gang. It was within the province of the jury to credit Mezzano's explanation, which was not inherently improbable, notwithstanding Guzman's and Cuevas's arguments to the contrary.

The second element—specific intent to promote, further or assist in any criminal conduct by gang members—is also satisfied here from the evidence the crimes were committed jointly by several gang members. "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, *supra*, 51 Cal.4th at p. 68; accord, *People v. Livingston* (2012) 53 Cal.4th 1145, 1171; see *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 ["[c]ommission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime"].)

3. *The Matter Must Be Remanded for Resentencing of Cuevas*

As the Attorney General concedes, the trial court's imposition of the one-year-firearm enhancement pursuant to section 12022, subdivision (a)(1), with respect to Cuevas's conviction for assault with a firearm was unauthorized because use of a firearm is an element of the offenses. (See *People v. Sinclair* (2008) 166 Cal.App.4th 848, 855-

11

856.)  Although Cuevas contends the enhancement should simply be struck, the proper action is to remand for resentencing.  (See *People v. Woods* (2010) 191 Cal.App.4th 269, 273 ["[w]hen an unlawful sentencing decision is made . . . , the proper course of action is to allow the trial court to lawfully exercise its discretion and impose a lawful sentence"].)  The trial court may have selected the middle term of three years for the aggravated assault conviction, instead of the low term of two years, if it realized it could not impose a one-year enhancement under section 12022, subdivision (a)(1).  It is within the province of the trial court to consider this issue on remand.

## DISPOSITION

The judgment is reversed as to Cuevas and remanded for further sentencing proceedings.  The minute order entered following Guzman's and Cuevas's convictions is modified to state the statutory basis for the five-year gang enhancement is section 186.22, subdivision (b)(1)(B).  In all other respects the judgments are affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


JACKSON, J.


12