[No. F004242. Fifth Dist. Aug. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH RAY CLIFTON et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Isaiah B. Roter and Allen R. Crown, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General and Willard F. Jones, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—Defendants Kenneth Ray Clifton and Lois Ann Baker were each charged with unlawfully driving and taking a motor vehicle (Veh. Code, § 10851) and an alternative count of receiving stolen property (Pen. Code, § 496).[1] Baker was further charged with possession of controlled substance paraphernalia (Health & Saf. Code, § 11364), a misdemeanor. The information was later amended to allege two prior felony convictions against Clifton (§ 667.5, subd. (b)).

After jury trial, Clifton was found guilty of the auto theft charge and not guilty of receiving stolen property. He later admitted one prior conviction and the trial court found the other prior conviction to be true. Clifton was sentenced to state prison for a total term of five years. Baker was found guilty of receiving stolen property and of possession of controlled substance paraphernalia. The court found Baker to be a narcotics addict or in imminent danger of becoming one, suspended a two-year sentence to state prison and committed her to the California Rehabilitation Center for a period not to exceed two years less credits earned.

Both defendants filed timely notices of appeal.

### STATEMENT OF FACTS

On December 13, 1983, Misael Guerrero was taking a shower at his residence in Porterville. While in the shower Guerrero noticed a man enter

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

the bathroom. When Guerrero got out of the shower, he discovered his pants were missing, along with his car keys, wallet, the pink slip to his 1974 Pontiac Grandville and about $240 in Mexican money. None of Guerrero's friends admitted taking his pants.

When Guerrero prepared to leave for work the next morning, he discovered his car was gone. The car had been parked near a tree in the yard the night before. He reported the missing car to the police. The pink slip to the car was in the name of Elipido Vasquez. Guerrero purchased the car from Vasquez in August 1983 for $400, but had not transferred the car into his own name due to lack of funds.

On December 14, 1983, Theunis Prins was working as sales manager at Mid Cal Auto Wholesale in Visalia. A man drove onto the lot and wanted to sell him a dark green Pontiac. There were three passengers in the car. The man wanted $150 but Prins would only offer $75. The man left to sell the car elsewhere but later returned. He agreed to sell the car for $75 and gave Prins the pink slip for the car. Since the slip was not in the name of the seller, Prins went to the Department of Motor Vehicles (DMV) to obtain a printout on the car. The DMV could not produce a complete printout on the car and Prins returned to the lot. After a while the seller said he needed to run an errand. Prins returned the pink slip to him and the man drove away. Shortly after the car left, a DMV inspector called Prins and told him the car had been stolen that day.

The same day Joe Ceballos was working at the Auto Venders lot in Visalia. A green Pontiac sedan with four occupants entered the lot. The driver said he wanted to sell the car for $250. Ceballos told him the owner of Auto Venders was not present and suggested they return later. As Ceballos left for lunch two or three hours later, he saw the car being driven back onto the lot.

Visalia Police Officer Gary E. James received a radio call about a possible stolen vehicle at 3:20 p.m. on December 14, 1983. James and other officers made a traffic stop on the car as it drove into the Auto Venders lot. Kenneth Clifton was the driver of the vehicle. Lois Baker was seated in the front passenger position. Antonio and Melva Leon were in the back seat. After the occupants stepped out of the car, the officers conducted an inventory search of the vehicle. They found a cosmetic bag containing narcotics paraphernalia under Baker's right front passenger seat. The bag contained no identification. Lois Baker appeared to have needle tracks on her right arm. She was the only occupant of the car with visible needle marks. Police found the pink slip to the Pontiac in Clifton's wallet during a booking search.

## Defense

The defendants did not testify on their own behalf. Clifton's attorney argued there was no circumstantial evidence to connect defendants with the theft of Guerrero's vehicle. Baker's attorney argued she was merely a passenger in the vehicle and she did not unlawfully exercise control over the cosmetic bag under the car seat.

## Discussion

### I. Was Defendant Baker's Conviction of Receiving Stolen Property Supported by Substantial Evidence?*

. . . . . . . . . . . . . . . . . . . . . . .

### II. Was Defendant Clifton's Conviction of Unlawful Taking of an Automobile Supported by Substantial Evidence?

Defendant Clifton contends he could not be convicted of violating Vehicle Code section 10851 because the complaining witness had no indicia of ownership of the 1974 Pontiac Grandville.

Vehicle Code section 10851, subdivision (a) provides: "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in the county jail for not more than one year or in the state prison or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment."

A violation of this section requires proof of a specific intent to deprive the owner of the car of possession or title for either a temporary or permanent period. (*People* v. *Johnson* (1961) 191 Cal.App.2d 694, 699 [13 Cal.Rptr. 1].) The language of the statute places the burden on the People to show by direct or circumstantial evidence the defendant lacked the consent of the owner. (*People* v. *Rodgers* (1970) 4 Cal.App.3d 531, 534 [84 Cal.Rptr. 288].) Mere possession of a stolen car under suspicious circumstances is sufficient to sustain a conviction of unlawful taking. Possession

---

*See footnote on page 195, *ante.*

of recently stolen property is so incriminating that to warrant a conviction of unlawful taking there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. (*People* v. *Hopkins* (1963) 214 Cal.App.2d 487, 491-492 [29 Cal.Rptr. 636].) Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating consciousness of guilt, an inference of guilt is permissible. The jury is empowered to determine whether or not the inference should be drawn in light of all of the evidence. (*People* v. *Brown* (1969) 1 Cal.App.3d 161, 164-165 [81 Cal.Rptr. 401].) Specific intent to deprive the owner of possession of his car may be inferred from all the facts and circumstances of the particular case. Once the unlawful taking of the vehicle has been established, possession of the recently taken vehicle by the defendant with slight corroboration through statements or conduct tending to show guilt is sufficient to sustain a conviction of Vehicle Code section 10851. (*In re Robert V.* (1982) 132 Cal.App.3d 815, 821-822 [183 Cal.Rptr. 698].)

 In the instant case, defendant essentially contends ownership is an essential element of the crime described in Vehicle Code section 10851 and the People failed to establish Guerrero was the owner of the vehicle. It was not registered in Guerrero's name, his name did not appear on the pink slip, nor had he submitted a notice of transfer to the DMV. Therefore, Guerrero was not an "owner" within the meaning of Vehicle Code section 460, and defendant Clifton could not be convicted absent sufficient indicia of ownership in Guerrero. Defendant's argument is not persuasive.

Under Vehicle Code section 460, an "owner" includes (1) a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents, or creates a security interest in the vehicle, or (2) the person entitled to the possession of a vehicle as a purchaser under a security agreement. The definition of an owner found in the Vehicle Code does not apply under all circumstances and one may be considered to be an owner of a car although he has not transferred the title in the manner required by the Vehicle Code. (*Everly* v. *Creech* (1956) 139 Cal.App.2d 651, 657 [294 P.2d 109] [construing liability under the "newly acquired automobile" provision of an insurance policy].) The records of the DMV do not necessarily and conclusively establish the true ownership of a vehicle. (*Gates* v. *Levers* (1951) 108 Cal.App.2d 131, 133 [238 P.2d 143].) A certificate of ownership is evidence of title, although not conclusive on the subject. (*Caccamo* v. *Swanston* (1949) 94 Cal.App.2d 957, 964-965 [212 P.2d 246].)

■ In the instant case, Guerrero testified he was the owner of the 1974 Pontiac, he purchased the vehicle from Vasquez several months prior to the theft, he paid Vasquez $400 for the vehicle, and he received the pink slip from Vasquez at the time of the purchase. He further testified the vehicle had been in his sole possession from the date of purchase to the time of the unlawful taking. Defendant did not testify on his own behalf. Thus, Guerrero's testimony as to ownership, possession, and exclusive dominion and control of the vehicle is uncontroverted. This uncontroverted testimony, without more, is sufficient to support an implied finding of ownership of the 1974 Pontiac at the time of the taking. (*People* v. *Wade* (1957) 150 Cal.App.2d 281, 283 [309 P.2d 841]; Evid. Code, § 411.) Consequently, the mere fact Guerrero was not the registered owner of the vehicle at the time of the theft does not fatally undermine his otherwise uncontradicted assertion of ownership. Nor does the failure of the transferor and transferee to strictly comply with the Vehicle Code transfer procedures preclude the prosecution under Vehicle Code section 10851.[2]

Section 4 states: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." ■ While there is no comparable provision in the Vehicle Code, it has long been held this rule of construction also applies to criminal statutes that are not a part of the Penal Code. (*People* v. *Van Alstyne* (1975) 46 Cal.App.3d 900, 912, fn. 10 [121 Cal.Rptr. 363], cert. den. 423 U.S. 1060 [46 L.Ed.2d 652, 96 S.Ct. 798].) Construing the ownership element of Vehicle Code section 10851 to include automobile purchasers such as Guerrero is consistent with the rule of section 4.

■ In the instant case, defendant Clifton had the stolen pink slip on his person when he was apprehended on December 14; he attempted to sell the car almost immediately after it was taken from the possession of Guerrero on December 13 or 14; and Clifton was willing to sell the vehicle for

---

[2]Defendant cites *People* v. *Rodgers, supra,* 4 Cal.App.3d 531 and *Jerman* v. *Superior Court* (1966) 245 Cal.App.2d 852 [54 Cal.Rptr. 374] in support of his position. In *Rodgers,* the Second District Court of Appeal found insufficient evidence to show defendant lacked a car owner's consent to take and drive her vehicle. The car owner's husband testified he parked the vehicle in a garage. The car was locked, and the car was gone when he returned two days later. The owner did not testify and her absence was unexplained. Defendant testified a friend loaned him the car. In *Jerman,* a finance company automobile repossessor was charged with violating Vehicle Code section 10851 after he repossessed a vehicle from a defaulting purchaser under a conditional sales contract. The Third District Court of Appeal issued a peremptory writ of mandate to restrain the proceeding. The finance company was the owner of the vehicle on the day in question because it held legal title and it was entitled to possession due to the conditional buyer's breach. Thus, both cases are clearly distinguishable.

$75 even though Guerrero had paid Vasquez $400 for the car and Ceballos thought $250 was "a pretty good price" for the car. Clifton's possession of the stolen vehicle combined with the other suspicious circumstances were sufficient to support his conviction of violating Vehicle Code section 10851.

III. DID THE LOWER COURT ERRONEOUSLY USE DEFENDANT CLIFTON'S 1979 CONVICTION TO ENHANCE HIS SENTENCE?*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed as to defendant Clifton. As to defendant Baker, the conviction of receiving stolen property is reversed. In all other respects, the judgment is affirmed.

Hanson (P. D.), Acting P. J., and Ritchey, J.,† concurred.

---

*See footnote on page 195, *ante.*
†Assigned by the Chairperson of the Judicial Council.