Filed 6/6/13  P. v. McIntosh CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AARON ROBERT MCINTOSH,<br><br>    Defendant and Appellant. | 2d Crim. No. B238443<br>(Super. Ct. No. 2010036791)<br>(Ventura County) |

Aaron Robert McIntosh appeals a judgment of conviction of street terrorism, and unlawful driving or taking of a vehicle, with findings of a crime committed to benefit a criminal street gang, a crime committed while on bail in another case, and service of three prior prison terms.  (Pen. Code, §§ 186.22, subd. (a) & (b)(1), 12022.1, subd. (b), 667.5, subd. (b); Veh. Code, § 10851, subd. (a).)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

James David Ivans, Jr. became a "full-patch" member of the Ventura chapter of the Hells Angels motorcycle gang in 2006, after having served as a "hang around" and "prospect" for several years.  McIntosh was also a "full-patch" and "filthy

---

[1] All further statutory references are to the Penal Code unless stated otherwise.  References to section 12022.1 are to the version in effect prior to January 1, 2012.

few" member of the Ventura chapter, i.e., he committed violent crimes on behalf of the gang.

Ivans rode a Harley-Davidson motorcycle that had belonged to his father. Ivans's father, a member of a motorcycle club associated with the Hells Angels, died in a motorcycle accident. Tron Elliott, a motorcycle repair shop owner, rebuilt the motorcycle for Ivans. Ivans described his relationship with Elliott as "best friends." Based upon an understanding with Elliott, Ivans transferred title to the motorcycle to him by a vehicle title document ("pink slip"). Ivans did this because he could not afford to pay Elliott for the repairs. He also intended to protect the motorcycle from seizure by law enforcement or the Hells Angels. Ivans described the title transfer as a common practice among the gang members.

Ivans retained sole possession of the motorcycle and was its only rider with the exception of another motorcycle mechanic who repaired it. Elliott did not drive or possess the motorcycle after he rebuilt it, and Ivans never lent the motorcycle to McIntosh.

In 2010, Ivans pleaded guilty to attempted extortion and received a grant of probation with terms and conditions that included not associating with the Hells Angels. Former Hells Angel President George Christie gave Ivans the ultimatum "to either quit or get kicked out." Ivans had witnessed beatings inflicted by Hells Angels members upon resigning members and was fearful of physical retaliation.

In October 2010, Ivans moved to the home of Vincente Felix, a friend who was not associated with the Hells Angels. Ivans brought his motorcycle and Hells Angels clothing with him. He informed Felix that he was leaving the Hells Angels and that the clothing would be returned to them.

At Ivans's request, Felix removed the motorcycle's gasoline tank bearing the Hells Angels insignia and gave the tank to another gang member. Ivans requested that Felix "hold" the now-inoperable motorcycle for him.

Ivans, who was in protective law enforcement custody, then left Ventura. Felix delivered the Hells Angels clothing to Christie because "normal people aren't supposed to own that stuff."

On October 8, 2010, McIntosh arrived at Felix's home, asked about Ivans's whereabouts, and stated that he was going "to take the bike." Felix did not question McIntosh where he was taking the motorcycle. McIntosh and his girlfriend took the motorcycle. Shortly thereafter, an undercover sheriff's deputy followed both a pickup truck that contained Ivans's motorcycle in the bed of the truck and an automobile driven by McIntosh's girlfriend to the Oak View home of Hells Angels member Joe Cerezo. The deputy saw McIntosh and his girlfriend enter the residence, but he lost sight of the pickup truck and motorcycle. Later that afternoon, McIntosh and his girlfriend took the motorcycle to Wayne Ortman, a motorcycle repairman in Ojai, for repair and replacement parts.

That same day, Ivans spoke with Felix and learned that McIntosh had taken his motorcycle. Ivans then contacted Ventura County Sheriff's Deputy Brian Whittaker to report the theft. Whittaker informed Ivans that he could not report the theft because he was not the motorcycle's legal owner. In a recorded conversation, Ivans telephoned Elliott and asked that he report the theft. Elliott refused, stating that he would not put his "name out there like a fucking rat." He agreed to transfer title to Ivans, however, to allow him to report the motorcycle theft. Elliott testified that he executed the pink slip to "[g]et [Ivans] and his problem out of my hair." Elliott also executed a "bill of sale" at the police station, prepared by a police officer in part to assuage Elliott's concerns of involvement in the investigation.

In another recorded conversation, Ivans spoke with Felix who stated that Mcintosh took the motorcycle and ordered him to "stay clear." Felix was anxious because he resided near the Hells Angels clubhouse and feared retaliation from the gang members.

3

On October 9, 2010, sheriff's deputies recovered Ivans's motorcycle in Ortman's garage. Ortman later admitted that McIntosh requested that he repair the motorcycle.

*Evidence of Prior Similar Theft*

*Evidence Code section 1101, subdivision (b)*

William Kyle Hoffman bought a used Harley-Davidson motorcycle in 2009 and became its registered owner. He later became a "hang around" and a "prospect" of the Ventura chapter of the Hells Angels.

On August 20, 2010, Hoffman did not attend a required Hells Angels meeting because he decided to resign from the gang to spend time with his girlfriend and their baby. He did not appear at the meeting to announce his resignation because he knew that a member could be brutally beaten for resigning.

In the early morning of August 21, 2010, McIntosh, Joe Cerezo, and another Hells Angels member arrived at Hoffman's residence and spoke with him regarding his resignation. Hoffman agreed to return his Hells Angels clothing, but refused to surrender his motorcycle. McIntosh and Cerezo then removed Hoffman's motorcycle from the side of the residence, forcing it through a wooden gate. McIntosh donned his Hells Angels' vest, started the motorcycle by a toggle switch, and drove away.

Hoffman reported to police that McIntosh and the others stole his motorcycle. Ventura County Sheriff's Deputy Victor Medina later saw McIntosh riding the motorcycle in Santa Barbara, and arrested him. The motorcycle was then returned to Hoffman and with assistance from law enforcement, he moved from Ventura.

Hoffman also testified concerning the criminal activities of the Ventura chapter. As a prospective member, he knew of assaults, stabbings, and gun and drug trafficking committed by members. Hoffman also described the brutal assault of Danny Siegel, a full-patch Hells Angels member who left the motorcycle gang.

4

Members hog-tied Siegel while a tattoo artist blacked out his tattoos. Later, McIntosh and another member beat him severely. Hoffman witnessed the assault upon Siegel.

*Hells Angels Gang Evidence*

Ventura County Sheriff's Deputy Brian Whittaker testified as an expert witness regarding the Hells Angels motorcycle gang. Whittaker, a member of the International Outlaw Motorcycle Gang Investigators Association, had extensive training and experience in investigating motorcycle gangs.

Whittaker testified that the primary criminal activities of the Ventura chapter of the Hells Angels included drug and firearm trafficking, extortion, and assault with a deadly weapon. He also described predicate criminal convictions committed by prospects and members of the Ventura chapter, including drug and firearm crimes.

Whittaker described a Hells Angels membership as a lifelong commitment, and stated that a member who resigned would receive harsh treatment, e.g., forceful removal of tattoos and confiscation of his motorcycle.

*Conviction and Sentencing*

The jury convicted McIntosh of street terrorism (count 1) and unlawful driving or taking of a vehicle (count 2). (§ 186.22, subd. (a); Veh. Code, § 10851, subd. (a).) It also found that he committed count 2 to benefit a criminal street gang. (§ 186.22, subd. (b)(1).) In a separate proceeding, the trial court found that McIntosh committed the crimes while on bail in another case, and that he served three prior prison terms, including one for a prior conviction of Vehicle Code section 10851. (§§ 12022.1, subd. (b), 667.5, subd. (b).)

The trial court sentenced McIntosh to a prison term of 10 years, based upon a three-year midterm for count 2, a four-year criminal street gang enhancement, and three one-year terms for the prior prison terms. The court imposed a two-year on-bail enhancement but stayed it until resolution of the prior case involving theft of Hoffman's motorcycle. It also imposed and stayed a two-year midterm for count 1, imposed a $1,000 restitution fine, a $1,000 parole revocation restitution fine (stayed), an

5

$80 court security assessment, and a $60 criminal conviction assessment, and awarded McIntosh 681 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

McIntosh appeals and contends that: 1) insufficient evidence supports his conviction of unlawful taking of a vehicle; 2) the trial court erred by admitting Hells Angels gang evidence; and 3) the trial court denied his constitutional right to confront witnesses by admitting hearsay evidence of the predicate gang offenses.

*DISCUSSION*

*I.*

McIntosh argues that there is insufficient evidence to support his conviction of unlawful taking of a vehicle because there is no named victim. He contends that Ivans was neither the title owner nor in possession of the motorcycle at the time of the theft.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*People v. Streeter*, *supra*, at p. 241.)

Vehicle Code section 10851, subdivision (a) provides: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense . . . ." A violation of Vehicle Code section

6

10851 requires proof of a specific intent to deprive the owner of the car of possession or title for either a temporary or permanent period. (*People v. Clifton* (1985) 171 Cal.App.3d 195, 199.) The prosecutor must establish by direct or circumstantial evidence that the defendant lacked the consent of the vehicle's owner. (*Ibid.*) Moreover, the records of the California Department of Motor Vehicles do not conclusively establish true ownership of a vehicle. (*Id.* at p. 200.)

Here Ivans and Elliott testified that they did not give McIntosh permission to take the motorcycle. McIntosh also did not inform Ivans or Elliott that he was taking the motorcycle and he did not inform Felix where he was taking it. Moreover, McIntosh took Hoffman's motorcycle several months earlier when Hoffman resigned from the gang. Whether the proper victim was Ivans or Elliott, McIntosh nevertheless committed the crime. (*People v. Clifton*, *supra*, 171 Cal.App.3d 195, 200 ["The records of the DMV do not necessarily and conclusively establish the true ownership of a vehicle"].) Sufficient evidence and all reasonable inferences therefrom support his conviction.

## II.

McIntosh contends that admission of the Hells Angels gang evidence was "highly prejudicial," denying him due process of law pursuant to the federal and California constitutions. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 [gang evidence may be "extraordinarily prejudicial" or of little relevance to guilt].) He contends that the trial court was required sua sponte to limit the gang evidence or to bifurcate trial of the street terrorism count and the gang enhancement from the motorcycle theft. McIntosh relies upon *People v. Albarran* (2007) 149 Cal.App.4th 214, 232 [admission of irrelevant gang evidence extremely prejudicial denying defendant due process of law] and asserts that the error is reversible pursuant to any standard of review.

McIntosh has forfeited this argument because he neither requested the trial court to bifurcate the gang-related count and enhancement, nor did he object to the

7

gang-related evidence. Indeed, McIntosh acknowledged in court that the gang-related evidence "has been upheld by the *Albillar* case, and . . . [the prosecutor] must have read the *Albillar* case. . . ." He has not preserved the claim for review. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028.) McIntosh also does not cite authority requiring the court's obligation to sua sponte bifurcate the allegations or limit the evidence.

Moreover, the gang-related evidence was relevant to explain the Hells Angels' practice of confiscating the motorcycles of those who leave the organization and to refute any evidence that McIntosh was borrowing the motorcycle to repair it. The evidence also explained the reluctance of witnesses to become involved or testify at trial, e.g., Elliott refused to file a police report regarding the theft and evaded a subpoena requiring his presence at trial.

*People v. Albarran*, *supra*, 149 Cal.App.4th 214 is distinguishable. There no evidence existed connecting defendant's gang membership to his crime of shooting inside a home during a birthday party. (*Id.* at p. 227 [evidence of shooting did not establish a gang-related motive and gang expert witness testified he did not know reason for shooting].) In contrast, the gang-related evidence here was relevant to the charged count of street terrorism and to the gang enhancement. (*People v. Hunt* (2011) 196 Cal.App.4th 811, 817, 818 [distinguishing *Albarran* on that basis]; *People v. Williams* (2009) 170 Cal.App.4th 587, 612 [same].)

In his reply brief, McIntosh relies upon the recent decision of our Supreme Court in *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1148, holding that the crime of street terrorism pursuant to section 186.22, subdivision (a), requires that at least two gang members commit the underlying felony. In *Rodriguez*, the defendant was a criminal street gang member who acted alone in committing attempted robbery.

In contrast, here an undercover sheriff's deputy saw Ivans's motorcycle in the bed of a red pickup truck occupied by two men and followed by an automobile driven by McIntosh's girlfriend. Minutes later, McIntosh and his girlfriend entered the home of Joe Cerezo, another Hells Angels member who was involved nearly two

8

months earlier in the taking of Hoffman's motorcycle. Indeed, Cerezo informed Hoffman that he intended to take Hoffman's motorcycle "so . . . some members down at the clubhouse won't get upset." In a red pickup truck, McIntosh later delivered Ivans's motorcycle to Ortman for repair. This evidence and reasonable inferences therefrom establish that McIntosh and Cerezo were two Hells Angels members involved in the crime of street terrorism.

*III*.

McIntosh asserts that the trial court erred by permitting Deputy Whittaker's testimony regarding the predicate crimes committed by the Hells Angels as an element of the crime of street terrorism and the gang enhancement. (§ 186.22, subds. (a) & (b).) McIntosh claims that the circumstances of the predicate crimes are hearsay evidence which violates his Sixth Amendment right to confront witnesses. He points out that although he did not object to the testimony at trial, he raised an objection thereto in his motion for a new trial.

For several reasons, we reject McIntosh's argument. First, Mcintosh did not object at trial to Whittaker's testimony regarding the factual circumstances underlying the predicate crimes. Absent a specific and timely objection, the claim is not preserved for review. (*People v. Riccardi* (2012) 54 Cal.4th 758, 827-828, fn. 33 [failure to preserve claim pursuant to Sixth Amendment confrontation clause]; *People v. Samuels* (2005) 36 Cal.4th 96, 122 [failure to preserve claim of inadmissible hearsay evidence].) Moreover, arguments made in a motion for new trial do not constitute a specific and timely objection made at trial. (*People v. Williams* (1997) 16 Cal.4th 153, 254 [subsequent arguments in a motion for new trial do not substitute for a timely objection].)

Forfeiture aside, we rejected this argument in *People v. Ramirez* (2007) 153 Cal.App.4th 1422, 1424 [gang expert relied upon hearsay evidence regarding facts of predicate crimes]. An expert witness testifying regarding criminal street gangs may base his opinion upon conversations with gang members, information gathered by other

9

law enforcement officers, his own personal investigations, or other information. (*People v. Gardeley* (1996) 14 Cal.4th 605, 620.)  "Hearsay in support of expert opinion is simply not the sort of testimonial hearsay the use of which [*Crawford v. Washington* (2004) 541 U.S. 36 and progeny] condemn[]."  (*People v. Ramirez*, at p. 1427.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

10

Charles W. Campbell, Jr., Judge

Superior Court County of Ventura

_____

Law Office of Anthony D. Zinnanti, Anthony D. Zinnanti for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.