Filed 6/20/13  P. v. Mobley CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IVERY LEE MOBLEY,<br><br>    Defendant and Appellant. | B240957<br><br>(Los Angeles County<br>Super. Ct. No. LA067725) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Ivery Lee Mobley appeals his conviction and sentence for one count of unlawful driving or taking of a vehicle with a prior plus enhancements. He contends the trial court improperly admitted evidence of a prior conviction and improperly instructed the jury on the elements of the crime. He also argues the trial court abused its discretion in imposing an upper term for his sentence. We affirm.

## PROCEDURAL BACKGROUND

On August 24, 2011, appellant was charged with one count of unlawful driving or taking a vehicle with a prior, in violation of Penal Code section 666.5. As part of count 1, the information alleged appellant had three prior convictions: a 1998 conviction for violating Vehicle Code section 10851 (the 1998 conviction); and two 2004 convictions, one for violating Penal Code section 487, subdivision (d) and another one for violating Vehicle Code section 10851 (the 2004 convictions). The information also alleged that, for the purposes of Penal Code sections 667.5, subdivision (b), and 1203, subdivision (e)(4), appellant suffered six prior convictions, including the three listed in count 1. Appellant pleaded not guilty and denied the allegations.

The trial court bifurcated the priors from count 1 and ruled count 1 would be presented to the jury as a violation of Vehicle Code section 10851, subdivision (a).[1] The jury found him guilty. Appellant waived his right to a jury on his priors. The court found the prior 1998 conviction and 2004 convictions to be true under count 1 and found appellant had suffered four of the six prior convictions for purposes of Penal Code sections 667.5, subdivision (b), and 1203, subdivision (e)(4). The court imposed an eight-year sentence: an upper term of four years for count 1, plus four consecutive one-

---

[1]     Vehicle Code section 10851, subdivision (a) states: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in a county jail for not more than one year or pursuant to subdivision (h) of Section 1170 of the Penal Code or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment."

year terms for each prior prison term allegation found true. The court ordered appellant to serve seven years in county jail and one year of supervised probation. The court also imposed restitution, and various fines, fees, and custody and conduct credits not at issue in this appeal. Appellant timely appealed.

## STATEMENT OF FACTS

On March 3, 2011, appellant rented a 2001 Chevrolet Cavalier from Domestic Auto Rentals (Domestic) in Reseda, California. Levon Sukiassyan, a car rental agent at Domestic, handled the transaction. Appellant signed a rental contract and provided Sukiassyan with a copy of his driver's license, a $100 credit card payment, and a $120 credit card deposit. He gave three phone numbers, listed his address at 5921 Whitsett Avenue, No. 106, in North Hollywood, and indicated his employer was "Dress Out Store." He provided proof of a nonowner's automobile insurance policy from Farmer's Insurance and a copy of a bill showing his current home address on Whitsett, which was different from the address on his driver's license. Appellant was supposed to return the car after one week, on March 10.

Appellant returned to Domestic on March 10 to extend the rental another week to March 17. At that time he paid $50 in cash, and because his credit card was declined, he authorized Sukiassyan to pay the rest of the next week's rental from his deposit, which brought his balance due down to $16.50, to be paid on March 17.[2] Appellant did not return on March 17 to pay the amount due.

After March 17, Sukiassyan called appellant at the cell phone and work numbers listed on the rental contract, but could not reach him. Between March 18 and March 24, Sukiassyan left a message on appellant's cell phone telling him that the car was due to be returned and he would have to pay to keep the car longer. Appellant called Domestic on

---

[2] Although not entirely clear, the balance of $16.50 appears to be the difference between appellant's total payments of $270 (the initial $100 payment and the $120 deposit on March 3, plus the $50 cash payment on March 10), minus total rental charges of $286.50 for two weeks' rental ($146.50 for the week of March 3, and the $140 for the week of March 10).

March 24, telling Sukiassyan he was ill, but he would come to Domestic's office later that day to pay. He never appeared or contacted Domestic again and never paid the amount due on the rental.

On March 25, Domestic sent a demand letter to appellant's Whitsett address via certified mail, stating that the rental payment was overdue and Domestic would take "legal steps to get the car and the payment" if appellant did not visit Domestic's office as soon as possible; the letter was returned to sender as "[u]nclaimed" and "[u]nable to forward." On March 30, Sukiassyan called appellant's work phone number and spoke to a woman named Amanda, who told him appellant was not there, but gave him the address of the Dress Out Store, appellant's workplace. He called appellant's work number again on March 31 and again was unable to reach appellant. On April 6, Sukiassyan and the owner of Domestic went to appellant's home address on Whitsett, and spoke to a woman there who was moving out and said she did not know appellant. On the same day, they also went to the address for the Dress Out Store, but did not locate the store or the suite where the store was supposed to be located. Sukiassyan found another address online for a Dress Out Store in Van Nuys, with appellant's name listed as "company contact," but when Sukiassyan visited that address, he found a business called "A.Z.Z. Mailbox."

On April 26, Sukiassyan filed an embezzled vehicle report with the police. The next day, appellant was arrested at a motel, where the rental car was found; it was returned to Domestic from the impound yard. Sukiassyan testified that, during the 40 days appellant kept the car after March 17 until it was recovered on April 27, appellant did not have permission to drive, take, or use the car and did not pay any money for the rental.

During Detective Alison Alexander's investigation of the case, she was provided with a copy of appellant's driver's license and visited the Van Nuys address listed on it (which was the same as the Van Nuys address for the Dress Out Store Sukiassyan found online), but found a mailbox rental business there. She also searched online for "Dress Out Store, Van Nuys," and found the same address she had already visited.

4

The prosecutor called Paul Castillo, who at the time of trial worked at a car rental business called Vista Ford and did so in 1997 when appellant rented a vehicle and did not return it, resulting in his 1998 conviction. Although Castillo did not remember details of the incident, upon reviewing his testimony in the case leading to the 1998 conviction, he recalled appellant signed a rental agreement to rent a 1996 Windstar from Vista Ford on January 23, 1997. Appellant provided his driver's license and a credit card. Appellant rented the vehicle for a week, but at the end of that time he did not return it. Castillo sent him a letter via certified mail stating that he had to return the vehicle within 24 hours, but appellant never returned it. Vista Ford eventually received the car back from impound.

Appellant did not testify. In his case-in-chief, he called only Detective Alexander as a witness, who testified to her actions to investigate the embezzled vehicle report filed by Sukiassyan.

## DISCUSSION

### 1. The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Appellant's 1998 Conviction, and If So, Any Error Was Harmless

Appellant contends that the trial court abused its discretion by admitting evidence of his 1998 conviction because it was only minimally probative of his intent in the current case and the risk of undue prejudice outweighed its probative value. We disagree.

### A. Factual Background

Appellant's 1998 conviction was based upon a violation of Vehicle Code section 10851 for his unlawful driving or taking of a vehicle without owner consent from Vista Ford in 1997. Before trial, the prosecution moved to admit evidence of this conviction pursuant to Evidence Code section 1101, subdivision (b), arguing that it was relevant to intent and absence of mistake by appellant or the rental car company. Appellant objected, arguing that the motion was untimely; the evidence was not being offered to show intent, but disposition; the prior incident was remote; and the incident was more prejudicial than probative.

The court granted the motion, finding the evidence relevant and admissible under Evidence Code sections 1101, subdivision (b), and 352. The court explained intent was

5

central to the case but "difficult to prove" in a case involving "an excess taking of a rent-a-car," and the prior and current incidents were "virtually identical," that is, "the taking of a rental car following the rental of that car by the defendant." The court noted the issue was the age of the prior incident, but explained that "the passage of time works in the defendant's favor because it could be argued that since the other case was so old, it should have less relevance and, therefore, less prejudice to him." Under Evidence Code section 352, the court noted that, while the prior incident might be unduly prejudicial because it was identical to the current offense, that factor was counterbalanced by the age of the incident, the fact that it resulted in a conviction "so the jury wouldn't think that it's punishing a defendant for . . . 1997 or '98 conduct in 2012," and the fact that it was not highly prejudicial conduct like violence or child molestation.

The issue arose again just before trial. At that point, the court indicated it would allow evidence of the prior conduct, but not the prior conviction. Later, the court admitted a certified copy of appellant's prior conviction under Evidence Code section 452.5 (permitting introduction of certified records of convictions), but redacting references to appellant's priors and prison sentence. Defense counsel strenuously objected, arguing the fact of the conviction would be unduly prejudicial and offering to stipulate to the underlying facts to avoid admission of the conviction itself. The court was unmoved: "I don't think just another rental clerk coming in and saying that the defendant kept a rental vehicle overdue is necessarily sufficient to put the defendant on notice, dealing with his state of mind, that it's unlawful activity. Therefore, the People would be prejudiced if I were to keep out, under what's otherwise admissible under 452.5 of the Evidence Code, a certified copy, which [the prosecutor] supplied the court, of the defendant's conviction." In response, defense counsel argued the court was changing the purpose of the conviction from intent to appellant's knowledge of criminality, which was a new theory raised for the first time during trial. Defense counsel also emphasized that appellant would stipulate to the underlying conduct. The court rejected the argument and affirmed its ruling.

6

The court instructed the jury that, if it found the prosecutor proved by a preponderance of the evidence appellant committed the 1998 conviction, "you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to take or drive the car without permission or the defendant had a plan or scheme to commit the offense alleged in this case. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offense. Do not consider this evidence for any other purpose. Do not conclude from this evidence that the defendant had a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crime. The People must still prove the charge beyond a reasonable doubt."

*B. Analysis*

Evidence Code section 1101, subdivision (b) permits the introduction of evidence "that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

"When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant." (*People v. Daniels* (1991) 52 Cal.3d 815, 856.) "'To be admissible to show intent, "the prior conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance."' [Citations.]" (*People v. Davis* (2009) 46 Cal.4th 539, 602 (*Davis*).)

"Because evidence of other crimes may be highly inflammatory, the admission of such evidence ""'must not contravene other policies limiting admission, such as those

contained in Evidence Code section 352.[3]"""" (*Davis, supra*, 46 Cal.4th at p. 602.)

Under Evidence Code section 352, "the probative value of a defendant's prior acts must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Ibid.*; see also *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).) We review the trial court's rulings under Evidence Code sections 1101 and 352 for abuse of discretion. (*Davis, supra*, at p. 602.)

The trial court properly found the 1998 conviction and underlying facts were highly probative of appellant's intent, a material fact in this case.[4] There is no question appellant's intent was material because, to show a violation of Vehicle Code section 10851, subdivision (a), the prosecutor bore the burden to prove appellant "drove or took a vehicle belonging to another person, without the owner's consent, and that [appellant] had the specific intent to permanently or temporarily deprive the owner of title or possession." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577 (*O'Dell*).) The 1998 conviction was also highly probative of his intent during the current incident because the surrounding facts were strikingly similar. On both occasions, appellant went to a rental car business, rented a car for a short time, and failed to return it at the end of that time; and both vehicles were later recovered and impounded. Although there were some factual differences, such as that appellant renewed the rental in the current case for a second week before keeping it beyond the rental period, the prior conduct was

---

**3** Evidence Code section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

**4** The prosecution argued in the trial court that the 1998 conviction was relevant to absence of mistake and the court instructed the jury that it could consider the 1998 conviction to find appellant had a plan or scheme. The parties have not raised those issues on appeal. Further, in his opening brief appellant refers to "knowledge" as one purpose for admission of the 1998 conviction, but treats knowledge and intent as synonymous. We will limit our discussion to whether the 1998 conviction is probative of appellant's intent.

8

"""sufficiently similar to support the inference that defendant probably harbored the same intent in each instance.""" (*Davis, supra*, 46 Cal.4th at p. 602.)[5]

Appellant's arguments to the contrary are unpersuasive. He argues the 1998 conviction was minimally probative because that incident involved his intent when he first rented the car, and the prosecution in this case needed only to prove his intent when he kept it beyond the rental period. Even if that were true, the 1998 conviction was still probative of appellant's current intent because, under Vehicle Code section 10851, subdivision (a), "specific intent to deprive the owner of possession of his vehicle '"may be inferred from all the facts and circumstances of the particular case."' [Citation.]" (*O'Dell, supra*, 153 Cal.App.4th at p. 1577.)

He also contends that evidence of the 1998 conviction was only minimally probative because it was "cumulative regarding an issue that was not reasonably subject to dispute." (*Ewoldt, supra*, 7 Cal.4th at p. 406; see also *People v. Leon* (2008) 161 Cal.App.4th 149, 169 (*Leon*).) We disagree; while the evidence of appellant's intent was strong, it was not so overwhelming that the 1998 conviction was merely cumulative on the issue. (*People v. Foster* (2010) 50 Cal.4th 1301, 1331 [uncharged conduct was not cumulative "because the balance of the evidence does not render [the defendant's] intent and actions beyond dispute"]; *People v. Lewis* (2001) 25 Cal.4th 610, 637 (*Lewis*) [uncharged conduct was not cumulative because "this is not a case in which the evidence relating directly to the charged crimes was so compelling on the question of defendant's intent as to render the uncharged crimes evidence merely cumulative on the issue"].)

Finally, we reject his claim that proof of the conviction itself was cumulative of evidence of the underlying conduct. As the trial court noted, without the conviction, the underlying conduct would have only proved appellant failed to return a rental car, not that he intended to deprive Domestic of ownership or possession of it.

---

[5] Even though appellant's uncharged conduct was 15 years old at the time of trial, that does not significantly limit its probative value. (*Ewoldt, supra*, 7 Cal.4th at p. 405 [noting that 15-year-old uncharged conduct was admissible].)

Having found the 1998 conviction highly probative, the trial court did not abuse its discretion in finding the probative value was not substantially outweighed by any risk of unfair prejudice. The 1998 conviction did not involve unduly prejudicial conduct like violence or child molestation. Castillo's testimony on the facts underlying the 1998 conviction "was no stronger and no more inflammatory than the testimony concerning the charged offenses." (*Ewoldt, supra*, 7 Cal.4th at p. 405.) Because appellant's prior conduct resulted in a conviction, there was little risk the jury would confuse the issues by having to determine whether appellant committed both the prior and current offenses or would consider punishing appellant now to prevent him from escaping punishment for his prior acts. (*Ibid*.; *People v. Tran* (2011) 51 Cal.4th 1040, 1050.) The trial court also carefully instructed the jury on the limited purpose of the 1998 conviction and redacted the abstract of judgment to eliminate references to appellant's priors and prison sentence. (*Ewoldt, supra*, at p. 405; *Lewis, supra*, 25 Cal.4th at p. 637.)

Even if the trial court erred, the error was harmless because it was not reasonably probable the jury would have reached a different verdict had the evidence been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Leon, supra*, 161 Cal.App.4th at p. 169 [applying *Watson* to admission of uncharged offenses].) Apart from the 1998 conviction, the evidence of appellant's intent was strong: he provided false contact information when he rented the car from Domestic; he did not return the car at the end of his rental period on March 17 or after Sukiassyan left him a message to return the car or pay the balance; he called Domestic on March 24 and said he would come in and pay the balance, but never appeared; he could not be reached after March 24; and he kept the car and did not pay any outstanding fees until he was arrested and the car impounded. On this record, any error in admitting the 1998 conviction was harmless.

## 2. *The Trial Court's Instruction on Vehicle Code Section 10851 Was Not Erroneous, and If It Was, Any Error Was Harmless Beyond a Reasonable Doubt*

The trial court instructed as follows on the elements of a violation of Vehicle Code section 10851, adapted from CALCRIM No. 1820:

"The defendant is charged with unlawfully taking or driving a vehicle, in violation of Vehicle Code section 10851. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant took or drove someone else's vehicle without the owner's consent and, two, when the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time.

"Consent may be limited in time or for a certain purpose. Even if you conclude that the owner had allowed the defendant or someone else to take or drive the vehicle before, you may not conclude that the owner consented to the driving or taking on or between March 18, 2011, and April 27, 2011, based on that previous consent alone. A taking requires that the vehicle be moved for any distance, no matter how small."

Appellant argues the second paragraph on consent was ambiguous and shifted the burden to him to prove consent when the prosecution bore the burden to prove lack of consent as an element of the crime. (See *People v. Clifton* (1985) 171 Cal.App.3d 195, 199 ["The language of the statute places the burden on the People to show by direct or circumstantial evidence the defendant lacked the consent of the owner. [Citation.]"]) The attorney general argues appellant forfeited this challenge by not objecting in the trial court. Alternatively, the attorney general argues there was no error, and even if there was, any error was harmless.

We find appellant has not forfeited his challenge by failing to object because it implicates his substantial rights. (See Pen. Code, § 1259; *O'Dell, supra*, 153 Cal.App.4th at pp. 1573-1574.) However, we find no merit to his argument.

In reviewing an instruction claimed to be ambiguous, we determine whether there is a "reasonable likelihood" the jury applied it in a way that violated appellant's rights. (*Estelle v. McGuire* (1991) 502 U.S. 62, 72-73; *People v. Smithey* (1999) 20 Cal.4th 936, 963.) The correctness of the instruction is determined from the entire charge, not merely from a single instruction or from parts of an instruction. (*Smithey, supra*, at pp. 963-964; see also *People v. Lee* (2011) 51 Cal.4th 620, 640.)

The language on limited consent in the challenged instruction mirrors Vehicle Code section 10851, subdivision (c): "In any prosecution for a violation of subdivision

11

(a) or (b), the consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of the owner's consent on a previous occasion to the taking or driving of the vehicle by the same or different person." (See also Bench Notes to Judicial Council of Cal. Criminal Jury Instructions (2013) CALCRIM No. 1820, p. 1157.) Nothing in this subdivision or the trial court's instruction relieved the prosecution from proving a lack of consent after March 17 when appellant kept the car beyond the rental period. Nor was appellant prevented from offering evidence to demonstrate consent after that date. The instruction merely informed the jury that it could not rely on prior consent alone to find consent at a later date. Indeed, in the prior paragraph, the instruction stated that the People bore the burden to prove beyond a reasonable doubt appellant took or drove the car "without the owner's consent." Given that the court also instructed the jury repeatedly on the overall burden of proof, we find no reasonable likelihood the jury placed the burden on appellant to prove consent.

Even if the instruction was erroneous, the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).[6] (*People v. Flood* (1998) 18 Cal.4th 470, 502-503.) The evidence of lack of consent after March 17 was overwhelming and undisputed. Sukiassyan testified that appellant kept the car without permission from Domestic after March 17 and described extensive efforts to contact appellant and recover the car and payment after that date, all to no avail. Defense counsel elicited no contrary testimony on cross-examination and did not address consent in closing arguments, focusing instead on intent. Under these circumstances, any error was harmless and does not warrant reversal.

### 3. *Appellant Has Forfeited His Challenge to His Sentence for Count 1 and He Has Not Shown Ineffective Assistance of Counsel*

Appellant argues the trial court abused its discretion by imposing an upper term of four years on count 1 because the court mentioned imposing a midterm and its

---

[6] Appellant concedes and the attorney general agrees this challenge is subject to harmless error review under *Chapman*.

12

explanation did not support an upper term: "So the court is going to set total jurisdiction in this case at the maximum of eight years, but it will be eight years with seven years in custody in county jail. That's calculated as the mid term of three years. The court selects the mid term because of the nature of the current offense and the relative small amount of loss balanced against his numerous convictions that are not part of the state prison parties [*sic* -- likely "priors"]. So mid term of three years -- I'm sorry, high term of four years, four years priors, total jurisdiction of eight years."

Although defense counsel argued against an upper term before the court announced appellant's sentence, defense counsel did not object to the explanation he now challenges, and we find his argument forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) We will nevertheless address this claim because appellant contends the failure to object amounted to ineffective assistance of counsel. He has the burden to show "(1) his . . . trial counsel's representation fell below an objective standard of reasonableness and (2) he . . . was prejudiced (i.e., there is a reasonable probability that a more favorable determination would have resulted in the absence of counsel's deficient performance)." (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1372, citing, inter alia, *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

We need not decide whether defense counsel was deficient in failing to timely object to the court's statement of reasons because it was not reasonably probable the court would have imposed a midterm had defense counsel done so. In addition to the court's express reasons for imposing an upper term, the court denied probation in part because appellant took advantage of Domestic as a small company that could not track his rental history.[7] That fact alone could have justified imposing an upper term. (See

---

**7** In denying probation, the trial court explained: "I don't totally understand you, Mr. Mobley. Usually people that we deal with here in court, as you've seen, are young men in their late teens, early twenties. Usually when they get over that hump over to about age 30 recidivism falls precipitously. And for whatever reason, here you are in your fifties, and you're still doing the same thing that you did in your twenties. [¶] It's not like you're a professional car thief or anything either. As [the prosecutor] says, you're taking advantage. There's probably a computer base like a 'do not fly list'[;]

13

Cal. Rules of Court, rule 4.421(a)(3) & (8) [identifying as aggravating factors whether victim was "particularly vulnerable" and whether crime was carried out with planning or sophistication]; see *People v. Black* (2007) 41 Cal.4th 799, 813 ["[T]he existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term."].)  Appellant does not argue this factor was insufficient or improper to justify an upper term, but only that the court did not expressly rely on it for that purpose.  Had his counsel timely objected, we think the court would have.  Because appellant cannot show a reasonable probability the court would have imposed a midterm had his counsel objected, his ineffective assistance of counsel claim fails.

**DISPOSITION**

The judgment is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

there's probably a 'do not rent list' and I'm sure that's why Mr. Mobley has trouble finding places that will rent him a car.  I'm sure a place like Messnick [*sic* -- likely "Domestic"] Car Rental isn't the type of place buying their Chevys at auction and renting them out, isn't the kind of place that has the resources to police their people, why they offer discount cars at discount prices, but here's Mr. Mobley taking advantage of that and doing it over and over again.  [¶]  This is his fourth joyriding -- this is his fourth as alleged.  Then I notice way back in the oldest state prison prior not alleged was another grand theft of an automobile.  So this is the fifth conviction of driving an automobile without the owner's consent, which is, you know, almost unheard of, in my experience.  [¶]  In this case, based upon that type of behavior, probation is denied."

14